**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
<u>**INFORMAL BRIEF FOR HABEAS AND SECTION 2255 CASES**</u>

No. 13-8037,    <u>Vonte' Gaffney v. F.B. Bishop, Jr.</u>
            1:12-cv-03168-RDB

**1. Jurisdiction**
A. Name of court from which you are appealing: In The United States District Court For The District of Maryland
B. Date(s) of order or orders you are appealing:
November, 20 , 2013

**2. Timeliness of notice of appeal (for prisoners)**
Exact date on which notice of appeal was placed in institution's internal mailing
system for mailing to District Court: A Notice of Appeal and Request For Issuance of Certificate of Appealability and Motion To Appeal Without Paying Fees or Cost on December 19 , 2013. The United States Court of Appeals For The 4th Circuit or Case No. 13- 8037 Filed on Jan. 2,

**3. Certificate of Appealability** 2014 ( the day it was placed in the mail on a Thursday . )
Did the district court grant a certificate of appealability?   Yes [ ] No [✓]
If Yes, do you want the Court of Appeals to review additional issues that were not
certified for review by the district court?        Yes [ ] No [ ]
If Yes, **you must** list below the issues you wish to add to the certificate of
appealability issued by the district court. If you do not list additional issues, the
Court will limit its review to those issues on which the district court granted the
certificate.

**4. Issues on Appeal**
Use the following spaces to set forth the facts and argument in support of the issues
you wish the Court of Appeals to consider on appeal. You must include any issue
you wish the Court to consider, regardless of whether the district court granted a
certificate of appealability as to that issue. You may cite case law, but citations are
not required.
**Issue 1.** See Attached Continuation For The Entirety of the Issue #1

**Supporting Facts and Argument.**

Trial counsel 's failure to properly investigate , obtain and admit into evidence booking photographs of Appellant (Mr. Gaffney ) , which both immediately pre-dated and post dated the alleged offense , constituted ineffective istance of counsel . The only evidence presented at trial which connected the

Continuation Page # 1 - Issue # 1

appellant to the shooting of the complainant, Marcus Davis was the single eyewitness testimony of Brian Norman. The complainant, Mr. Davis did not testify at trial. Furthermore, there was no forensic evidence offered by the State connecting the appellant to the crime nor was a weapon ever recovered. Consequently, the credibility and reliability of Mr. Norman's testimony as the sole eyewitness was the paramount issue for the jury to determine. As the sole eyewitness, Mr. Norman's testimony was the only evidence to allegedly tie and link the appellant Mr. Gaffney to the shooting of Mr. Davis. Mr. Norman's testified that on April 27, 2005, he was shown a photographic array, which included the appellant in the photographic array line-up. Mr. Norman's testimony, however was equivocal as vividly shown in the transcript below. ( December 15, 2005 Transcripts at pg. 21 : 15 and 32 : 2 ) ( See Appendix for all related transcripts cited for the record ) Thus, the issue of the appellant's hair, and in particular its length on the day of the shooting was extremely important since according to Mr. Norman's testimony, Mr. Davis's shooter had long braided cornrows, and the appellant hair differed from the photographic array identification picture shown to him on April 27, 2005 ( the photo was taken at some unknown time )

Continuation Page #2

, so the fact that the photograph of the appellant
in the photo array was unknown and not dated ,
it is extremely important to the appellant Mr. Gaffney 's
argument , especially after Mr. Norman stated the
night of the shooting , " he identified the one with the
closest resemblance " , and when asked what was dif-
ferent , he states , " he had cornrows in his hair .
" After picking the appellant 's photo array , he
also states , " ( the appellant as ) looking like the
guy who shot Marcus . " ( See State Exhibit # 1 in
Appendix with transcribed statement and signature of
Mr. Norman for clarification dated April 27, 2005,
the night of the shooting ) . I would also like to
point it to the court that , the appellant 's appearance
in a photograph taken on the day of his arrest May 2,
2005 was taken 5 days after the shooting occurred
differed also from Mr. Norman 's testimony and i-
dentification as a credible witness to the actual
description given by himself of the shooter having corn-
row braids verifying that the guy who shot Mr. Davis
had long hair able to be braided . ( See Petitioner 's Ex-
hibit # 2 - May 2, 2005 photo of the appellant )
Mr. Norman 's courtroom identification was fur-
ther addressed in cross-examination through the fol-
lowing exchange by Mr. Rosenberg ( December 15,
2005 transcripts pg. 34 : 9 - 22 ) . And later in the
cross-examination , Mr. Norman continuously spoke

Continuation Page #3

testified as follows . ( See December 19 , 2005 -
Trial Transcripts at pg . 51 : 15 - 24 ) ( emphasis
added ) . Thus , given the inconsistencies between the
appearance of the appellant Mr . Pelfrey in the photo
array and Mr . Norman's testimony that the person who
shot Mr . Davis had cornrows , it was critical to
the appellant's defense to establish and show that the
appellant did not and could not have had cornrows on
the date of the said offense when someone attempted to
kill Mr . Davis on April 27 , 2005 . Such evidence
was in the possession of the trial counsel , and yet
, even though trial counsel admitted his "big mistake
" and his "terrible mistake" , he was well aware
of this key defense evidence , prior to and during
trial , and he said it himself . " he simply
forgot to introduce it , the photograph of the appel-
lant on April 7 , 2005 from a prior arrest and
this photo was the appellant's key evidence to possi-
bly acquit the defendant or at the least raise doubt
in the jurors' minds because the State's case was
extremely weak and did not prove their case beyond
a reasonable doubt . The trial counsel of the appellant
, Mr . Rosenberg described this key issue as the crux
of his whole defense in the March 7 , 2006 - Motion
For A New Trial Transcripts at pg . 57 : 12 . Ob-
viously , the defense counsel admitted failure on
the record and his non-strategic decision to forget to

Continuation Page #4

present Key defense evidence deprived the appellant of
a fair trial with adequate representation and was
clear proof of trial counsel's ineffectiveness, and
the District Court did not address the totality of
law on this issue, in particular, as submitted
to the court respectfully, and ruled that the appel-
lant did not establish ineffective assistance of counsel
as required according to Strickland. (See the Dis-
trict Court's Memorandum Opinion by Judge Bennett
on pg. 7 and 8 pertaining to this photograph issue)
Although, District Court Judge Bennett recognized what
he called in his ruling "minor inconsistencies" or
discrepancies in Mr. Norman's testimony during my
trial attorney's cross-examination and closing argu-
ments compared to other eyewitnesses; what he calls
"minor inconsistencies or discrepancies" are major
when it comes to Brian Norman as the sole eyewit-
ness available for trial when it comes to testifying
as to what he claims he saw. Other eyewitnesses
failed to appear to court, to be cross-examined
by my trial attorney, so there was no way for
him to distinguish who was telling the truth or
who wasn't, so the defense closing argument with-
out corroborating evidence of the photograph he simply
forgot to present fell on deaf ears (to the jury with-
out presenting tangible proof for them to consider the
option of finding) the appellant "guilty or not"

Continuation Page #5

but if he did, it would've been a very strong possibility that they could have found the appellant "not guilty" instead of "guilty" if trial counsel would have done so promptly. Specifically, the appellant Mr. Gaffney had been arrested on an unrelated charge on April 7, 2005, 20 days exactly prior to the shooting of Mr. Davis. The booking photograph taken on that date ( See Petitioner's Exhibit #1 submitted at the Post-Conviction hearing ) showed the appellant with a short haircut unable to be cornrow braided, which is consistent with his appearance on May 2, 2005 and the photo array shown to the Mr. Norman the night of the shooting, April 27, 2005, all these following dates are within a 30-day span which shows the appellant is incapable of growing his hair that quick to be braided in such a short time span. Only 5 days separated from the day of the appellant's arrest and the night of the shooting of Mr. Davis relating to this case. Additionally, trial counsel understood the significance of obtaining an appropriate "Booking" photograph in the case presented to the Court so he requested previously to the ASA Mr. Grant McDaniel that he recover for the appellant's trial counsel Mr. Rosenberg a photograph of Mr. Gaffney's mugshot on the date of his arrest May 2, 2005. ( See March 7, 2006 -

Continuation Page # 6

Motion For New Trial Transcripts at pg. 7 : 4 - 23 )
However , the State's Attorney Mr. McDaniel provided
trial counsel with an old photograph of the appellant
with braids in his hair , which was not the photo-
graph that the trial counsel was seeking presumably .
( See Petitioner's Exhibit # 13 or the photograph presented
in the Appendix as photograph # 4 attached ) Also
See Motion For New Trial Transcripts at pg. 56 :
3 - 25 , 57 : 1 - 16 , 58 : 1 - 24 Mr. Gaffney
, the appellant however was able to provide his trial
counsel with a copy of his booking photograph from
the unrelated April 7, 2005 arrest , But yet , the
trial counsel failed to even attempt to present or in-
troduce this photo into evidence during the defense case
- in - chief because trial counsel simply forgot , and
why the defense attorney asked the State's Attorney at
trial to present a photo of the appellant the day of
his arrest. ( May 2, 2005 ) to support defense case
to possibly acquit the appellant , I don't know
, but what I do know is the trial attorney had
ample enough time to receive it himself because such
photos are easily obtained through subpoena as demon-
strated by the appellant's post - conviction Attorney
Mr. David Lease ( See Photographs # 2 and # 3 in
the Appendix from April 7, 2005 and May 2nd 2005
in order ) ( Also , you will see arrest dates and
clarification of identification and case docket # to

Continuation Page #7

verify the dates of appellant's arrests for proof )
Only after the defense had rested did trial counsel
seek to re-open the case to admit this highly criti-
cal evidence by stating the following . (See December
14, 2005 - Trial Transcripts at pg. 30. 4 - 23 )
At the initial response by the court, its possible
that Judge Shirley M. Watts might've thought that
the April 7, 2005 photo was (irrelevant to) the case
because due to trial counsel's unpreparedness, he
mistakenly said the photograph was from a prior arrest
from April the 7th of "last year", which is
clearly another "big mistake" that's terribly in-
correct, the photograph was from April the 7th
of that year (2005)) as the record now shows
but it is a possibility why the ASA Mr. Mc
Daniel objected to the photograph being submitted late
and unfortunately for the (appellant) the court denied
the motion to re-open the defense to submit a key
defense for the appellant, in which clearly shows
the requirement for Strickland standard applied by
the Supreme Court, clearly showing trial counsel was
grossly ineffective. Based on this evidence presented,
the District Court's ruling was erroneous. At the
Motion For A New Trial () trial counsel described the
importance of this April 7, 2005 photograph by stating.
(March 7, 2006 Transcript at pg. 5 12 - 16 )
Given that trial counsel acknowledged that the "crux of

Continuation Page #8

his whole case " was the discrepancies between the
sole eyewitness' description of the shooter and the real-
time photographs of the appellant Mr. Gaffney, trial
counsel's conduct in failing to introduce such evidence
in this case fell well short of that expected by a
reasonable trial counsel. In fact, trial counsel
also reminded the court that on the last day of trial
he attempted to re-open the case so that he could
introduce a booking photo of the appellant taken on
April 7, 2005 which was to show the appellant hair
was incapable of being braided in cornrows. Trial
counsel recognized that why the photographs were
significant in this case, however, the court noted
that he had the photograph of April 7, 2005
available to him during the defense-case-in-
chief, which trial counsel acknowledged that,
and it was because he had the photo but failed
to even offer it into evidence sufficiently and prompt
-ly that the trial court denied the appellant's
Motion For A New Trial. Notwithstanding trial coun-
sel's admission of his "terrible mistake", the
post-conviction court held that: ( see Post Con
viction Court's Memorandum Opinion at pg. 8-9 )
the post-conviction court simply failed to recognize
the significance of the April 7, 2005 photo, i.e.
specifically in conjunction with the May 2, 2005 photo.
The April 7, 2005 photo is not simply just

Continuation # 9 — Federal Habeas Corpus — Issue # 1
   Page

" another photo " as described by the Post - Con-
viction Court. That photo was taken a mere 30 days
before the shooting and 25 days before the appellant
was arrested for the shooting of Mr. Davis. The
short haircut displayed on Mr. Gaffney ( the appellant
) in the May 2, 2005 photo alongside the April
7, 2005 photo coincides with the appellant's
description at the time of the shooting took place
and this is why the eyewitness said the photo array
( with Mr. Gaffney with a short haircut also differed
clearly from the shooter's descriptive hairstyle given
by Mr. Norman ) was different because the appel-
lant's description contradicted the only witness in
the case identification that Mr. Gaffney ( the ap-
pellant ) was the shooter since the shooter had corn-
rows and it's obvious that the appellant did not
between that 30 day time period. The bracelet pre-
sented at trial was a wristband photo of the May
2, 2005 of the appellant and by trial counsel not
presenting the April 7, 2005 photograph, the
smaller May 2, 2005 photo could be easily dis-
credited and discounted as a desperation ploy by
the defendant / appellant as a scheme to outwit
the State and the jury, and the jury could've
assumed or concluded that any alleged change in the
appellant's appearance was an effort to avoid iden-
tification and arrest since it was subsequent to the

Continuation Page # 10

shooting. And hair can be shortened rather quickly.
And, photo arrays state as the above writing over
the heading of the line-ups that, "Hairstyles
can be easily changed ..." (see photo array in the
Appendix as photo # 1), so the May 2, 2005
photo alone is not enough to prove this significant
point. Additionally, no evidence at all was pre-
sented as to when the photo of the appellant was
taken in the April 27, 2005 photo array shown to the
eyewitness, Mr. Norman. Therefore, there was
no evidence before the jury that the appellant's hair
length prior to or before and after the shooting
was too short and would not support Mr. Norman's
identification that Mr. Gaffney had cornrows.
Rather, the best tangible evidence that supported
the appellant's true hair length was omitted from
the jury's consideration through trial counsel's
admitted error and would've raised possible doubt
during the jury's deliberations because both photos
from April 27, and May 2, 2005 would have
contradicted Mr. Norman's mistaken identity of
the defendant / appellant's appearance allegedly
at the scene of the crime during Mr. Davis's
shooting. Several admitted errors by trial counsel
are the makings of ineffectiveness assistance of coun-
sel according to Strickland's standards. It is
objectively unreasonable to conclude that's counsel's

Continuation Page # 11

admitted failure to introduction a highly exculpatory
piece of evidence because he forgot did not fall below
an objective standard of professional reasonableness.
Moreover, there was no possible tactical or strategic
reason not to admit the April 7, 2005 photograph
and evidence regarding the appellant's hair length,
so this cannot be taken lightly by this respective
Court, as the others erroneously done. The
post-conviction court and the decision by the District
Court badly conflated the issue of prejudice.
While initially finding the trial counsel's mistake
in failing to introduce the April 7, 2005 photo-
graph did not fall below the standard of care de-
spite controlling case law to the contrary, the
post-conviction court also found a lack of pre-
judice due to the " direct and graphic courtroom
Identification " by Mr. Norman ( ( Post-Conviction
Opinion at pg. 10 ) However, it is because of
Mr. Norman's testimony and courtroom identification
which makes the contradicting photo so important
to the appellant's case presented. This was a single
eyewitness case without any corroborating evidence
physical evidence whatsoever, therefore, con-
trary to the post-conviction's finding, the
prejudicial finding effected by the trial counsel's
failure to introduce the contradicting photographs together
collectively to the jury cannot be overstated. Mr.

Continuation Page # 12

Norman's pretrial identification was equivocal when selecting the appellant's photograph from the array the night of the shooting, When he stated, " I guess so. Just the one with the closest resemblance." (December 19, 2005 Transcripts at pg. 51 : 16 ) and that photograph " looked like the guy." Id. at pg. 51 : 17 - 19. Mr. Norman also noted that No difference between the photographs was the actual shooter had cornrows in his hair and the photograph he seen of Mr. Gaffney (the appellant ) did not. In District Court's Judge Bennett's decision, he recognizes in his decision that Mr. Norman's testimony was contradicted by other evidence at trial regarding the shooter's hairstyle and lack of headwear, but however, he also states, it is not clear that the photograph embodies the pivotal importance that Gaffney (the appellant ) assigns to it. Judge Bennett also uses in his decision the testimony of Karen Brzowsky, the first Officer to report at the scene of the crime according to her testimony as the basis of his ruling, as other evidence that contradicts Mr. Norman's testimony, and Officer Brzowsky testified that the broadcast description of the alleged suspect specified that the suspect had on a grey sweatsuit and a red baseball cap, but everything else about the

Continuation Page # 13

suspect was "unknown" according to her reports.
( See December 19, 2005 - Trial Transcripts at pg. 12
6 - 25 and 13 : 1 - 25 ). The ruling by Judge
Pennett was erroneous based on this reference on many
levels. First and foremost, Mr. Norman was the
only eyewitness to show-up to testify on his friend
Marcus Davis's behalf because Mr. Davis did not
feel the need to testify on his own behalf in court, so
the claims of other eyewitnesses' statements are ir-
relevant in this respect because there is nothing on the
record to actually reflect what was said other than
what Officer Karen Brzowsky said "they" said
to her, and what the sole eyewitness Brian Norman
actually said occurred during his live testimony at
trial and even that testimony is equivocal and full
of other contradictions by other eyewitnesses' and
Officer Brzowsky and Brian Norman. Officer Brzow-
sky stated that the suspect had a "red" baseball
hat on on her radio description given to the dis-
patcher via KGA and Mr. Norman said, "he
wasn't wearing a red hat, ( pertaining to the
appellant during his courtroom identification ). . . not
that I can remember, no. How else would I remember
he had cornrows in his hair ? " ( see December 15,
2005 Transcripts at pg. 29 : 9 - 22 and December
19, 2005 at pg. 12 ) 7 - 16 and pg. 13 : 1 - 25 )
Judge Bennett recognizes the many inconsistencies in

Continuation Page # 14

The only eyewitness testimony from the other evidence
but he fails to recognize the evidence which is
clearly before the Court.) Secondly, Mr. Norman
stated he was within a few feet of the actual
shooter when Mr. Davis was shot, so who could
give a better description of the shooter, Mr.
Norman himself or Officer Brzowsky ... one
who was at the scene when it happened or one
who came afterwords ? ( See December 15, 2005
transcripts at pg. 7, 11-17 ). She was not
at the scene of the crime during its act, so her
credibility as to what happened during the shooting would
be inadmissible, and would constitute as hearsay.
When she tried to say what happened during trial,
she was quietly objected by trial counsel and sustained
by the court. ( See December 19, 2005 transcripts at
pages 6, 7, 8 and 9 for verification ). Mr.
Norman testimony as to what occurred when the police
arrived corroborates with her story as additional wit-
nesses being at the scene, but none of them testi-
fied at trial but Mr. Norman. Officer Karen
Brzowsky couldn't testify as to who she thought
shot Marcus, only could she testify as to what she
heard through witnesses such as Mr. Norman, as to
what happened and based on the record available
her testimony made Mr. Norman's statements even
more inaccurate and inconsistent as to what exactly

Continuation Page #15

occurred , but what is Known clearly is that the
perpetrator of the crime , who shot Mr. Davis
multiple times at close range , who was identified
by the sole eyewitness as having cornrows , who
committed the crime 6:30 pm in the evening on a
hot summer-like day , broad daylight , who did
not have on a red baseball hat as stated by Mr.
Norman , was not the appellant ( Mr. Gaffney )
( Also see December 15 , 2005 - Trial Transcripts at
pg. 50 : 1-25 and 51 : 1-24 ) The identifi-
cation in this case should not and cannot be taken
lightly as it is constantly being undermined as merely
another looking photograph by the Courts erroneous-
ly . The failure to obtain and produce evidence that
went to the "crux of his ( Mr. Rosenberg's )
whole defense " as trial counsel stated repeatedly ,
was extremely prejudicial . It certainly would have
been powerful in the closing arguments to hold up
two ( 2 ) photographs of the appellant , one of
April 7 , 2005 and the second one from May 2 ,
2005 , one shortly before and the other shortly
after the shooting of Mr. Davis . Such evidence
would have been substantially contradicted and weakened
the identification of the State's only eyewitness and
it is possible that at least one juror might would
have determined that this contradicted and weak
identification that the witness Mr. Norman was

Continuation Page #16

certainly uncertain of was insufficient to sustain a
guilty finding beyond a reasonable doubt. Thus,
the Government's case based entirely on this single
eyewitness was exceptionally weakened by many contra-
dictions including the appellant's very strong tangible
and highly credible photographs proving Mr. Norman
made an obvious error in his identification of the
appellant, as the alleged shooter. Consequently,
trial counsel's failure to obtain and produce such
evidence was objectively unreasonable under prevailing
professional norms and there was a substantial pos-
sibility that the jury verdict would have been different
if trial counsel had properly investigated and intro-
duced this key evidence. As such, the post-
conviction's decision and the District Court's con-
clusion was contrary to the law and the evidence
presented and involved an objectively unreasonable ap-
plication of the clearly established Federal law on the
effective assistance of counsel. ( Make note to the
Honorable Court that trial counsel also failed to
properly investigate what witnesses or alibi could have
testified as (1) the appellant's hair length in April of
2005 the appellant's mother certainly could have tes-
tify that the appellant had a short haircut and not
braids in April 2005. Mrs. Gaffney was present
throughout the entire trial. See Post-Conviction
Hearing Transcripts, June 17, 2010 at pg. 41-42. )

Continuation Page #17

Lastly , the appellant wants to aware the Court
as to why this case must be granted relief . The
photograph depicting Mr. Halfaey ( the appellant )
with braids shows just how important the true
identity of the appellant at the time of the shooting
is pivotal and extremely important , so this must
be taken into deep consideration based on these facts.
Trial counsel believes the State's Attorney intentionally
subterfuged the case to find the appellant guilty on
purpose ( See March 7, 2006 - Motion For New Trial
Transcripts at pg . 7 : 4 - 13 , pg. 56 : 4 - 25
and pg. 57 : 1 - 25 and also see Id . pg . 67 :
9 - 13 ) The ASA Grant McDaniel may not have
intentionally sought to subterfuge the case as Mr.
Rosenberg believed him to be doing on purpose . We
can't speculate on his intentions , but Mr. Mc
Daniel's integrity is not at question here , Mr.
Rosenberg's ineffectiveness is , and The Court can
clearly see objectively that Mr. Rosenberg's bad
decisions and admitted mistakes cannot be mistaken
as trial strategy. If Mr. Rosenberg would have
done a proper investigation and subpoenaed key defense
evidence himself ( as the Post-Conviction attorney
Mr. Lease did ) then , he wouldn't have to ac-
cuse the State's Attorney of subterfuging the case.
Besides , there's no sound trial strategy as to
why a defense attorney would ask the State's Attor-

Continuation Page # 18

ney to obtain evidence on behalf of the defense
attorney's client ( which so happened to be the
appellant ) since he was aware that it was the
crux of his whole case and acknowledge from the
beginning day of trial its importance to the
appellant's case trying to prove his innocence
in front the jury. Trial counseling inadequate
representation fell way below the professional norms
thus the appellant proved both prongs according to
Strickland. ( See Post-Conviction Memorandum Opi-
nion by Judge White on Pg. 9 ) The Court believes
the appellant's April 7, 2005 photograph may have
provoked the State's Attorney to offer a prior
booking photo, not pertaining to the case or
time frames surrounding the case and shooting if
Mr. Davis, trying to give a justification for the
State doing so, but the reason for doing so was
not because he was provoked, he was asked to
do that in which he done by trial counsel him-
self, thus making him unprofessional and
very much ineffective as my representation.

Continuation of the April 7th 2005 photograph with case
law attached on the next page for the issue above.

Next Page ➡    Additional Info For The 4th Circuit ➡

Page A.

Additional Information For The 4th Circuit Court of Appeals
For The Appellant's Federal Habeas Corpus For Relief Petition

A. Here is the Federal and Constitutional United States
law in support to the Appellant's Issue # 1 pertaining
to the ineffective assistance of counsel claims, for
trial counsel admitting that he forgot to present a
photograph of the Appellant, 20 days before the shooting
occurred on April 27, 2005, thus showing the appellant
did not fit the description of the shooter given by the
sole eyewitness Brian Norman equivocally. The Best Avenue
To Present This Error To The 4th Circuit - Court of Appeals
Is Through The Strickland v. Washington standard. The
appellant wishes The U.S. Court of Appeals 4th Circuit
Will Review The Application of Law to support the Appel-
lant's claims of ineffective trial attorney.

A. (1) - Given that trial counsel acknowledges that the
" The crux of his whole defense " was the discrepancy
between the sole eyewitness' description of the shooter given
during testimony and the actual real-time appearance
and photographs of Vonta' Avon Gaffney, the appellant
, which was from a prior arrest 20 exact days before
the shooter ( who had cornrows ) shot Mr. Davis on
April 27, 2005, and this April 7, 2005 photograph
shew that it's totally impossible for any person to
grow their hair in less than a ( 30 day period of time
) month. Trial counsel's conduct in failing to in-
produce such evidence in this case fell well short of

PG B.

that expected by reasonable trial counsel. _See e.g._
_Code v. Montgomery_, 799 F.2d 1481, 1487 (11th
Cir. 1986) ("counsel ineffective where "exclusive defense
was based on an alibi" and counsel failed to subpoena
"only witness potentially for defense"). _Smith v. Wain-_
_wright_, 799 F.2d 1442, 1444 (11th Cir. 1986)
("counsel's failure to present evidence of another's exculpa-
tory confession amounted to ineffective assistance").
_United States v. Pague_, 114 F.2d 928, 934-35
(9th Cir. 1997) ("failure to admit statement under "un-
available witness exception for statements against penal
interest" which exonerated defendant was reversible error")
. _Williamson v. Ward_, 110 F.2d 1508, 1522
(10th Cir. 1997) ("counsel's failure to investigate
the circumstances surrounding (another's) confession left
counsel unprepared to obtain the confession's admission
at trial and fell below an objective standard of professio-
nal reasonableness"). _Bryant v. Scott_, 28 F.2d
1411, 1418-19 (5th Cir. 1994) (counsel ineffective
for not "making any investigation of alibi witnesses,"
not interviewing" eyewitnesses to the crime .... because
there was no physical evidence" and failing" to inter-
view co-defendant .... who confessed to the crime of
robbery and maintains that Bryant is not the perpetrator
of the crime"). _Sanders v. Ratelle_, 21 F.2d
1446, 1461 (9th Cir. 1994) (as three of the state's
five eyewitnesses at some point identified (another)

Page C.

as the shooter, counsel was ineffective for failing to present "the confession of a person who claimed to be and may have been the real shooter "); Williamson v. Reynolds, 904 F. Supp. 1529, 1551 - 52 (E. D. Okla. 1995) (counsel was ineffective for failing to bring out that state's primary witness lied apparent-ly to avoided prosecution in an unrelated case by testi-fying against defendant and for failing to introduce video tape of another's confession to the crime), abrogated on other grounds by Nguyen v. Reynolds, 131 F.3d 1340 (10th Cir. 1997); Bowers v. State, 320 Md. at 428, 578 A.2d at 740 (Court held that trial counsel's failure to admit exculpatory hair evidence "violated at least two duties of counsel specifically listed in Strickland. 'The duty to bring to bear such skill and Knowledge as will render the trial a reliable adversarial testing process' and 'the overarching duty to advocate the defendant's cause'.") cf. Kimmelman v. Morrison, 477 U.S. 365, 385 - 387 (1986) (where defense counsel filed a suppres-sion motion late due to a mistaken understanding of the law, his error was unreasonable under professio-nal norms).


A. (2) - Notwithstanding trial counsel's admission of his "terrible mistake", the post - conviction court held that:

age D.

Trial counsel's tardiness to offer the April 7, 2005 booking photo does not fall below an objective standard of reasonableness as identified in Strickland, 466 U.S. at 667-682. Trial counsel's challenged action is failing to or forgetting to offer another booking photo of Petitioner dated April 7, 2005. Petitioner suggests that actually offering and admitting just the May 2, 2005 booking photo of Petitioner's wristband was inadequate; however, with the May 2, 2005 photo and the photo of Petitioner identified by Norman in the April 27, 2005 photo array, depicted Petitioner with short hair. The May 2, 2005 photo depicted Petitioner with short hair, as did the photo of Petitioner identified by Norman in the April 27, 2005 photo array.

In view of Norman's courtroom identification of Petitioner, the addition of one more booking photo depicting Petitioner's short hair would not likely have affected the verdict.

( Excerpts From Judge White's Post-Conviction Opinion on page 8 and 9 )

A. (3) The Appellant is asking the Court of Appeals to review the Appellant's ex-Post-Conviction representative attorney, Mr. David Lease's argument in

Page E.

respects to the issue at hand on page ( 13 ) of the Appellant's - Memorandum In Support of Mr. Gaffney's Petition For Habeas Corpus Relief and Request For Hearing to the United States District Court of Maryland.

A. (4) - The April 7th 2005 photo is not simply just "another Central Booking photo". This photograph shows the Appellant's appearance in clear view that he did not have hair long enough to be braided just 20 days before Marcus Davis was nearly shot to death by a shooter with cornrow braids, but this April 7, 2005 contradicts the speculation or accusation or theory and identification that the Appellant had cornrows in his hair on April 27, 2005. Such an accusation alone will be "objectively unreasonable" and plain misidentification. The May 2nd photo from the day the Appellant was arrested in 2005 just a mere "6 days" after the shooting being submitted by trial counsel alone without the April 7, 2005 photo is "insufficient" and cannot properly refute Mr. Norman's testimony by discrediting his accusation before trial during interrogation and during trial on the stand identifying the Appellant ( Mr. Gaffney ) as the shooter. The May 2, 2005 photo could have been easily discounted by the jury and speculated that the appellant may have cut his hair right after

age F.

Mr. Davis was elect to avoid arrest and to switch up his actual appearance, but the Court fails to recognize that this (April 7th, 2005) photo should not and cannot be taken as just another photo. The Court of Appeal must also take into consideration that the April 7th 2005 photo was never presented to the jury whatsoever during, so it's possibility that if they would have seen this photo then, it's a strong possibility that the outcome would have been different. The only was able to review a little institutional facility wristband as the defense's evidence to try to prove to the jury that the Appellant's appearance was different, when in fact the Appellant for his proper defense had other photos to present to the jury to show his actual appearance at the time of the shooting especially when the State's Attorney made it very much clear to the jury that " hairstyles can be easily changed." The April 27, 2005 photo is not dated as to when this photograph was taken in the array in the first place and since Norman's identification was the only evidence the State used to link the appellant as the alleged shooting then, this photograph must be "objectively" review, authenticated by the Courts, re-considered and reverse Mr. Guffory's conviction and vacate the sentence. An identification of an alleged shooter should not "objectively with moral reasonableness" upheld a

Page 4.

conviction of this magnitude ( life all suspended but 50 years in prison ), for a first degree attempted murder when the sole eyewitness identification was equivocal at the least by stating that the appellant "looked like the shooter who shot Marcus", "the one with the closest resemblance", by this alone as the accepted credible testimony of Mr. Norman should raise the eyebrows of the court that "maybe" Mr. Norman identified the wrong person possibly. An effective attorney would not have forgotten to present a photograph of such importance and such ineffectiveness deprived the appellant of a fair trial.

A (5) The State argues in its answer, "the mere existence of the photo did not make it admissible evidence that counsel was required to implement in his defense." ( State's Answer at pg. 19 )  The State's argument misses the point  " It doesn't matter whether the evidence would necessarily have been admissible in the specific form in which it was presented in the state courts on appeal or post - conviction review.  What matters is whether a competent lawyer would have been able to introduce the evidence, in some form, at trial."  Cannedy v. Adams, F.2d __ , 2012 WL 457827 ( 4th Cir. February 7, 2012 ), in a case factually similar to the appellant's present case, the court found ineffective assistance of

age H.

counsel on a § 2254 petition where trial counsel failed to introduce exculpatory evidence. The court provided ... Petitioner received ineffective assistance of counsel.

First, trial counsel performed deficiently. The defense theory of the case was that A.G. had fabricated her allegations. Defense counsel knew that J.C. could provide A.G.'s motive for doing so. Competent counsel would not have failed to interview such a potentially important witness or to introduce the significant exculpatory evidence that she could have provided. Second, counsel's deficient performance prejudiced Petitioner. It was reasonably likely that a competent lawyer could have introduced evidence of the away message in an admissible form. The prosecution's case rested on the jury's believing A.G.'s allegations, and its case was already weakened by inconsistencies in the government witnesses' testimony. Thus, had evidence of the away message been admitted, it was reasonably likely that at least one juror would have credited that evidence and concluded that a reasonable doubt existed as to whether A.G. fabricated her allegations. Accordingly, there is a reasonable probability that, but for trial counsel's deficient performance, the outcome of the trial would have been different. Petitioner's claim thereof meets the _Strickland_ standard for ineffective assistance of counsel, and his petition for relief must be granted. (See also Wiggins v. Smith, 559 U.S. 510, 535

Page I.

(2003) ("We find there to be a reasonable probability that a competent attorney, aware of this (evidence), would have introduced it at sentencing in an admissible form.") See also Duncan v. Ornoski, 528 F.2d 1222, 1234 (4th Cir. 2008) ("This court has repeatedly held that a lawyer who fails adequately to investigate and introduce (evidence) that demonstrates his client's factual innocence, or raises sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance.") Also review - Bowers v. State, 320 Md. at 428, 578 A.2d at 740 (Court held that trial counsel's failure to admit exculpatory hair evidence "violated at least two duties of counsel specifically listed in Strickland. 'The duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process' and 'the overarching duty to advocate the defendant's cause...'")

A. (6) - The Conclusion: The post-conviction court erroneously failed to address the controlling established Federal law on the case cited above. It is objectively unreasonable to conclude that counsel's admitted failure to introduce a highly exculpatory piece of evidence because he forgot/did not fall below an objective standard of professional reasonableness. Moreover, there was no possible tactical or strategic reason not to submit the

ge J.

April 7th 2005 photograph and evidence regarding the
Appellant's hair length in the defense case in
chief. In fact (in the trial record) trial counsel
readily admitted that he forgot and that he made a
"terrible mistake" in failing to introduce such an im-
portant piece of evidence that was "the crux of his
whole defense". The contradicting testimony of Brian
Norman's testimony cannot be undermined or overlooked.
Mr. Norman's pre-trial identification was equivocal as
well when selecting the appellant's photograph from the
array, he stated "I guess so." And more
importantly, if the shooter was said to have cornrows
, then why wasn't he one in the array with cornrow
braids including the appellant who on April 27, 2005
did not have braided cornrows. The appellant with "ob-
jective reasonableness" was and is not the shooter of
Mr. Davis. The post-conviction's conclusion was
contrary to and involved an objectively unreasonable
application of the clearly established Federal law on
ineffective assistance of counsel, so the appellant
prays the Court of Appeals in the 4th Circuit in the
United States overturn this conviction and vacate
this sentence and grant the petitioner a new trial.

Note :

The Continuation Pages of Issue # 1 Are Numbered In
It's Proper Ordering Sequence # 1 - 18

( See Appendix / Addendum Also For All Records Cited )

**Issue 2.** See Attached Continuation For The Entirety of the Issue # 2
See Continuation Pages # 19 - 22

**Supporting Facts and Argument.**

Trial counsel erred by failing to obtain medical records containing
exculpatory information . It is undisputed that trial counsel failed
to obtain the medical records of the complainant in this case , Mr.
Davis . At the hearing on Mr. Gaffney's ( the appellant's )
Motion For A New Trial , trial counsel asserted that he had
asked the State's Attorney for the complainant's medical records

**Issue 3.** See Attachment For Issue # 3
See Continuation Pages # 23 - 30

**Supporting Facts and Argument.**

Trial counsel failed to obtain Maryland Pattern Jury Instructions or Object to
improper and misleading jury instructions on First vs Second Degree At-
tempted Murder , which constitutes ineffectiveness . Trial counsel failed to
provide the trial court with any suggested jury instructions in this case
of a First Degree Attempt Murder . Trial Counsel's failure to provide any
requested jury instructions was further proof of his lack of preparation and

**Issue 4.** See Attachment For Issue #4 For The Entirety of the Issue Presented
See Continuation Pages # 31 - 34

**Supporting Facts and Argument**

Trial counsel failed to investigate and offer impeaching evidence of prior
convictions of complainant Marcus Davis . During trial , the sole eye
witness , Mr. Norman testified that Mr. Davis made the following
statement as a person with cornrows was approaching prior to the shooting
" I'm not running from that nigger , Vonnie ." Once the hearsay

Continuation Page #19 - Issue #9

before trial and was told that the State's Attorney did
not have them. (See March 7, 2006 Transcripts at pg.
7: 24-25 and 8: 1-17) Morever, a review
of the medical records provided that complainant had alcohol
in his system at the time of the shooting. The trial
court denied the Motion For New Trial, however based
on trial counsel's ability to have obtained those records
before the appellant's trial, the court concluded
in fact. (See March 7, 2006 - Motion For New
Trial Transcripts at pg. 101: 16-25, 102: 1-7)
Here as with the booking photograph of the appellant,
trial counsel failed to perform an adequate investigation
in order to identify and gather appropiate exculpatory
evidence, instead of retaining this important information
himself, he relies heavily again on the State's
Attorney to provide him with his defense at trial
to represent his client (the appellant). As trial
counsel plainly admits (on record), he did not
obtain the medical records and proceeded to start trial
without them. He also admitted the medical records
were of great importance and would have bolstered
his ability to cross examine the eyewitness and
attack the credibility of both, the eyewitness,
Mr. Norman, and the victim, Mr. Davis.
(Also See March 7, 2006 Transcripts at pg. 54:
1-25 and pg. 55: 1-25) Again, Mr. Rosen-
berg accuses the ASA Mr. McDaniel of prosecutorial

Continuation Page #20

misconduct, but what trial counsel calls "mis-conduct" is strictly showing his lack of preparation and his own laziness to do his own job as required by an attorney to make sure his client has a fair and impartial trial, and his choices to ask the State for such paperwork is not and should not be considered "sound trial strategy", because it is procedural protocol for an attorney of the defense to do so. But when you utter the cry of importance continuously to the Courts of such important exculpatory information / evidence such as the medical records and other evidence including the April 7, 2005 photo-graph of the appellant's identity at the time of the crime then, it would be best for the trial counsel to obtain such evidence himself, and not depend on the State (the defense's adversary) to provide a proper defense for the appellant's case. Trial counsel seen what happened the last time, he asked the State's Attorney for what he called important information, Mr. McDaniel for the State presented to him a photograph, trial coun-sel believed subterfuge the entire case. He is clearly ineffective because it not only shows poor judgment, but a lack of important and very critical preparation that could have possibly changed the outcome to the case in the jury's eyes.

Continuation Page # 21

Because this was the case of no victim and one
sole eyewitness, the credibility of that one witness
was paramount and obviously crucially important to
the Appellant's case. Trial counsel's failure to ob-
tain the victim's medical records, he fell below the
standards of a reasonable attorney. There is no tacti-
cal reason or advantage in failing to obtain the medi-
cal records pre-trial and since the records contained
information which would go to the lack of credibility
of the complainant and his friend (the eyewitness)
Brion Norman, there is nothing effective about that.
There is a reasonable possibility that the outcome of
the trial would have been different if trial counsel
had obtained and utilized this exculpatory information
(See Spearman v. Edwards 26 F. Supp. 2d 450
454 (E.D.N.Y. 1997) - "Court granted the
habeas petition on ineffective assistance of counsel
claim where "counsel did not pursue basic avenues
of investigation" which would have led to the dis-
covery of exculpatory medical records." ) Here
again, the post-conviction court and the District
Court ignored Constitutional and Federal law pertaining
to the issue at hand (in respect to Strickland's
high standards) and trial counsel's admissions re-
garding his failure to obtain important information through
his own inactions. (See Judge White's Opinion at pg 4
and Judge Bennett's Opinion on pg. 8 and 9) Both

Continuation Page #22

Courts improperly equated the mere ability to cross-exa
-mine the witness with the power of properly subpoened
contemporaneous medical records with which to confront the
witness. Such an erroneous conclusion is objectively unrea-
sonable. (See December 19, 2005 transcripts at pg. 58:
1-15 ) Here, trial counsel during closing arguments
tries to highlight the "missing" medical records as if
he couldn't have postponed the trial to retain them knowing
how important they were, only to later acknowledge
that he did a "lousy job" to receive them after ac-
cusing the ASA Mr. McDaniel of "prosecutor misconduct
" and "strategically withholding the medical records"
from the defense. (See March 7, 2006 Transcripts pg.
54: 2-25 and 55: 1-25 ) It is obvious from Mr.
Rosenberg's own mouth according to the records shown,
trial counsel fumbled the ball when it came to proper pre-
paration to prevent his poor performance, but it also
significantly clarifies and verifies, trial counsel had
built his entire defense around information and evidence
he failed drastically to obtain knowing this informa-
tion and evidence was extremely important and the
crux of his whole case. This is not sound trial stra-
-tegy. This is just a plain ol' lack of preparation
and all the necessary ingredients for ineffectiveness
of trial counsel, so the appellant is asking for the
higher Courts on the Federal level to re-consider the

Issue 3

Continuation Page # 23 - Issue # 3

Failure to fulfill his adversarial role. See Yarbrough
v State, 529 So. 2d 659, 662 (1998),
(Trial counsel's failure to propose any jury instruc-
tions was a factor in court's determination that
the trial counsel "failed to fulfill his adversarial
role".) Moreover, as acknowledge by the Post
Conviction Court and the District Court, the
trial court mis-instructed the jury with respect to
first and second degree attempt murder by omitting
a critical sentence (which differentiate the two
instructions from the Maryland Pattern Jury Instructions
In particular, the trial court instructed the jury
as follows: (See December 19, 2005 Transcripts at
pg. 38:7-25 and 39:1-17; Also see Post-
Conviction Court's Opinion at pg. 12 and the Opinion
by the District Court on pg. 9 & 10) The Court's
observation of the omitted sentence and the cavalier
disregard thereof is a blatant deviation of the
applied law unreasonably, the Post Conviction court
Judge White states, "(on pg. 13 of Judge's Opinion
)... however, the instruction excluded the same
sentence in the written instruction as the oral instruc-
tion", speaking in reference to a note that was
written to the jury pertaining to clarity between
the two instructions. And, the District Court Judge
Bennett goes further to say, "The single claim of
error is (that the jury instruction omitted the sentence

Continuation Page #24

" Second degree murder does not require premeditation
and deliberation . . ." Judge Bennett further states ,
" While that sentence would have provided additional
clarity to help the jury discern between first and
second degree attempted murder , it was not neces-
sary ." There analysis of this issue is completely
erroneous and must be reviewed even and re-considered
. Yes , the instructions to the jury simply omitted
the critical language from the Maryland Pattern Jury
Instruction 4 N . 3 under the second degree murder
charge . " Second degree murder does not require pre-
meditation and deliberation . . ." Thus , the jury was
not provided the distinguishing factors which separates
the two degrees of attempt murder from each other .
Trial counsel erred by failing to object to this inade-
quate instruction . Moreover , the State's Attorney
in his closing argument equated the mere intent to kill
was sufficient enough for the jury to find the appel-
lant " guilty " of first degree attempt murder
( See December 19 , 2005 Transcript at pg. 44 : 3 - 24
) . This argument emphasized the erroneous instruction
to the jury that attempted first degree murder
basically required only the mere intent to kill ,
without the other required additional elements of pre-
meditation and deliberation . The jury's confusion
over the instruction between the two attempt murder

Continuation Page # 25

a question directly from the jury, " We need
clarity between 1st and 2nd Degree Attempt Murder
? " In a written note ( which cannot be found on
record in the State's Exhibits or anywhere on the
Courts records in its actual typed or written form in
the response to the jury by the Judge Shirley Watts or
the Court Clerk's written response ) according to the
Post-Conviction court Judge Pamela White, the trial
court increased the compounded error by merely
providing the same instruction again with the same
exact omitted sentence to the jury which contained
the same material omission. ( Post-Conviction Court's
Memorandum Opinion at pg. 13 ) ( Also see page 14
of the same Memorandum Opinion from Judge White to
highlight the Courts wrongful decision based on this
resolution ). In the Courts' opinion, the post-con-
viction court sua sponte erroneously found the issue
of ineffective assistance of counsel waived because no
objection was raised or lodged by the Appellant's
trial attorney nor was the issue reserved for appeal
because trial counsel failed to object to the error,
so the Post-Conviction Court Judge cited State v Adams
and Walker v State, a ( 2008 ) and ( 1996 )
Maryland cases as the basic foundation for her decision
that " jury instructions cannot be argued for the first
time in a post-conviction proceeding." The post-
conviction court badly erred in this determination

Continuation Page #26

Since it was trial counsel's failure to object to the erroneous jury instruction which was the basis for the ineffective assistance of counsel claim. A defendant cannot waive a claim of ineffective of counsel by not raising it on appeal since the best vehicle for review of such a claim is by way of post-conviction relief. See United States v. James, 337 F.3d 387, 391 (4th Cir. 2008); Steward v. state, 319 Md. 81, 93, 570 A.2d 1029, 1034 (1990) (Please Review The Law Applied in The State Court's Judge's opinion which was mis-applied and erroneous to the appellant's claim of ineffectiveness to his trial counsel. The cases cited by Judge White was, See Adams v. State, 406 Md. 240, 266 (2008) and Walker v. State, 343 Md. 629, 645 (1996). Please Review Law Wrongfully Applied By Circuit Court Judge White). Moreover, the Post-Conviction Court decided that omission of this critical language which precisely describes the essential distinction between first and second degree attempt murder was of no consequence. The District Court's theory was synonymous by arguing ... " Gaffney (the appellant) has not even demonstrated this error was material (District Court Opinion - Judge Bennett pg. 10). " And due to the Federal Courts high standards such incorrect application of law by the Courts in this respect is

Continuation Page #27

unreasonable and erroneous and directly contradicted by the content of omitted language from the pattern instruction and the actual confusion exhibited by the jurors initiated the main reason why they asked " the Courts for clarity between the 1st and 2nd Degree Attempt Murder instruction." Consequently, the failure of Mr. Rosenberg's objection is the main reason why the appellant is arguing ineffective claim on trial counsel for his failure to object, his lack of jury instructions, and his ( trial counsel's ) failure to prepare a proper defense which lays the foundation for both prongs in the Strickland standard according to the Courts " Higher Standards " on the Federal level and the appellant believes he should be granted the opportunity for to reconsider its original conclusion because the error is in plain eyesight for the Courts to review and the records reflect the appellant's arguments. Additionally, the failure to object by appellant's trial attorney Mr. Rosenberg was objectively unreasonable for the District Court and the Post-Conviction court to recognize the erroneous jury instruction, but yet say it wasn't harmful to the appellant because it did not matter that the instruction was incorrect because the jury was given the " clarity between the two instructions ", they asked for. Such a conclusion by the Courts is completely wrongful

Continuation Page #28

and cannot be taken lightly. Trial counsel's failure to object to the erroneous instruction to the jury was objectionably unreasonable and raises the substantial possibility that the verdict could have been different. (See Gray v. Lynn, 6 F.3d 965, 968-969 (5th Circuit 1993) (finding attorney's failure to object to incorrect instructions on the intent element in an attempt murder case fell way outside the wide range of "professionally competent assistance." Also see Pickens v. Lockhart, 714 F.2d 1453, 1464, 1468-1469 (8th Circuit 1983) (finding ineffectiveness assistance of counsel where attorney failed to object to the jury instruction in the sentencing phase of a capital case that was a mis-statement of the law). If the jury was properly instructed, the appellant may have only been found guilty of second degree attempted murder. The post conviction court's holding along with the District Court's conclusion is objectively unreasonable. Finally, the Post-Conviction Court concluded that "it is inconceivable that the jury instructions given would confuse the jury, to the petitioner's detriment." (Post Conviction Court Opinion at pg. 14-15). However, this finding by the Post Conviction court was directly controverted by the jury's obviously expressed confusion when it sought clarification between the two attempt murder degrees

Continuation Page #29

Failed to alleviate and correct the error, even after the question was asked by the jury in the note written to the court during their deliberations. Although, on pages 83 and 85 on December 14, 2005 (the last day of trial) the Circuit Courts made reference and verification that a note was handwritten or typed to the jury containing the written instruction containing the first and second degree attempt murder instructions. There is nothing on the transcribed record verifying that the note is still in the State or Defense Exhibit files, but according to Judge White the written and oral instruction omitted the same exact instruction as clearly stated in the Maryland Pattern Jury Instructions - 4-17-3, "Second degree murder does not require pre-meditation and deliberation.", so as a result the correction was never made, the difference was never clarified to the jury, the written instruction is not on the Courts filing record to be recovered, as believed by Judge White in her opinion to this particular issue on pg. 13 of the Memorandum Opinion, to be verified by the appellant, and in conclusion, as vividly recognized by the Courts, both State and Federal District Court, the jury instructions as given to the jury was completely improper and wrong in respects to the 2nd Degree Attempt Murder instruction, thus making trial counsel's failure to object unavoidable and very much ineffective. To the appel-

Continuation Page #30

-tant, warranted relief should be granted to the
appellant, and the higher Court Would re-consider.
(Also See Issue #5)

(Please let it be fully aware to the courts attention
that the note to the jury is not in the State or Defense
or Post-Conviction Exhibits that was presented to the State
Courts during these phases, unless an extra file of
Exhibits exist that the Petitioner doesn't Know about
, it cannot be found on the record where the note was
written by or to the jury containing the actual
hand written questions or the actual instructions in
response to the jury questions seeking clarity on the
attempt murder instructions or in reference to reviewing
the video transcripts of Mr. Norman's testimony.
Review December 19, 2005 - Trial Transcripts from
pages 87 to 100 in its entirety to read the Circuit Courts
response to these critical questions that officially
effects the appellant's case and its official outcome
by this, Federal Court, respectfully. The last
time the note, either typed or written to the jury,
in response to jury's questions on the jury in-
structions was last mentioned on the record on pg.
89: 91. Note: there is nowhere on the record stating
that, State Exhibit # this or Defense Exhibit #
that or Court Exhibit #, etc. between pages 87 to
89: 91 as the other Exhibits does on the record.
Please Keep this in mind when reviewing Judge White's opinion.)

Issue 4

Continuation Page #31 - Issue #4

statement of Mr. Davis was admitted, Mr. Davis' credibility should have been attack. Maryland Rule 5-806 (a) provides, in pertinent part: "When a hearsay statement has admitted in evidence, the credibility of the declarant may be attacked..." (See Taylor v. State, 407 Md. 137, 140, 963 A.2d 197, 198 (2009).) Furthermore, Md. Rule 5-609 allows a witness' credibility to be attacked due to a prior conviction or an infamous or other crime relating to the witness' credibility. Mr. Davis had the following impeachable convictions:

1. District Court for Baltimore City, Case No. 5B01994363 Felony Theft (Over $300), Verdict: Guilty Disposition Date: July 27, 2000 (Mr. Davis appealed the conviction to the Circuit Court for Baltimore City, Case No. 301044006, which was dismissed on August 7, 2001)

2. District Court for Baltimore City, Case No. 3B00406098 - Count #1: Harassment, Course of Conduct, Count #2: Telephone Misuse Verdict: Guilty Disposition Date: August 28, 2000

Here, There is no conceivable trial strategy to avoid impeaching the credibility of the complainant who had

Continuation Page # 32

prior convictions for felony theft and other crimes.
Likewise, given Mr. Norman's equivocal identifica-
tion of the Appellant, the credibility of Mr. Davis
, if properly attacked, could raise a substantial
possibility that the verdict would have been different.
See Larsen v. Adams, 718 F. Supp. 2d 1201,
1228 (C.D. Cal. 2010) ("Counsel has an obli-
gation to investigate possible methods of impeachment
and the failure to do so may in itself constitute
ineffective assistance of counsel.") (citing Rey-
niso v. Giurbino, 462 F.3d 1099, 1112 (9th
Cir. ) 2006 ); also People v. Lee, 541 N.E.
2d 747, 754 (Ill. App. 1989) (Trial counsel's
failure to impeach key prosecution witness was one
factor in finding ineffective assistance of counsel).
Post-Conviction Court Judge believes Mr. Rosenberg's
decision not to impeach Mr. Davis's credibility
was sound trial strategy not to willingly 'degrade or
disrespect' the victim because if he would have
done so it would have been only to the appellant's
detriment, so the Judge thinks by impeaching
Mr. Davis's 5 year old convictions according to
the Court(s) decision, it would have vilified the
seriously injured victim, the complainant, Mr.
Marcus Davis, and by the appellant's trial
lawyer doing so, (Judge White concludes in the

Continuation Page # 23

Opinion ) , was doing a humanitarian great deed
by not introducing into the Courts decision (at trial ,
the Complainant , Mr. Davis , whether if the
charges was old or not . by trial counsel not doing
it was a conscience decision to avoid the condemnation
of the victim and highlighting or potentially empha-
sizing " the victim deserving to be shot ... "
( See Post - Conviction Opinion pg. 16 ) The appellant
cannot understand how the Court would come to a
conclusion as such , but trial counsel decision
to not present such evidence is not " sound profes-
sional judgment " and clearly proves trial counsel
was incorrect in his judgment to do so and ineffec-
tive because it clearly shows more emphasis as to
how unprepared he truly was , especially because
Mr. Rosenberg failed to ask for a continuation or
postponement to recover the medical records , and
if he would have done so then the appellant's
trial counsel would have known the victim had alco-
hol in his system at the time he was shot by the
assailant with cornrows . Plus , that information
along with the complainant's criminal convictions
would have made the connection with the two ( un-
known information at the time of the trial ) (made the
case more stronger on the defense behalf ) , and
weakened the State's case at trial . ( Also see
December 19 , 2005 - Trial Transcripts at pg. 57 .

Continuation Page #34

30 - 35 and pg. 58 : 1 - 15 ) Although , closing
arguments are not to be taken as evidence by the jury
right here . the record shows trial counsel in his
closing arguments to the jury trying to highlight to
the jury , Marcus Davis' s absence and the so-
called missing medical records that trial counsel just
dropped the ball to subpoena for trial and appellant's
defense . Just imagine , if trial counsel would have
subpoenaed the impeaching criminal history of Mr. Davis
and the medical records indicating Mr. Davis had al-
cohol on his breath and in his system . it's a
possibility that the outcome of the case would have been
different for the appellant when it comes to the ver-
dict . The post - conviction judge also believes that this
issue does not have an effect on Brian Norman's
in - court identification because Mr. Norman's "detailed
account of the incident " was 'accurate', even
though Mr. Norman identified ( Gaffney ) the ap-
pellant as "the guy who looks like the shooter ...
with the closest resemblance ". so if trial counsel
would have obtain impeaching evidence on Mr. Davis
during trial to attack his credibility , it may have
influenced him to approach cross - examination totally
different against Brian Norman on stand at trial
, especially after his testimony deemed inconsistent
, even to the District Court , Judge Pennett . On
this issue . the appellant deserves relief too .

Issue 5

Issue #5 - Federal Habeas Corpus Continuation Page #35

Trial counsel failed to move for a mistrial after pro-
secutor's blatantly improper argument to the jury
implying that Mr. Norman was being threatened.
During the prosecutor's closing arguments during his
rebuttal argument, the State's Attorney deliberately
stated as follows before closing his case. (See
December 19, 2005 Transcript at pg. 77 4-16)
This argument in the presence of the jury was inap-
propriate and extremely prejudicial. The prosecution
was attempting to draw an inference regarding an
alleged statement attributed to Mr. Davis' shooter
(who had cornrows according to Mr. Norman )
stating, "Anybody else snitches, they're gonna
get it, too." The prosecutor inappropriately at-
tempted to imply that this was the reason why
there was only one witness at trial, and even
that witness (Mr. Norman) was being intimi-
dated through surrogates of Mr. Gaffney, the
appellant. Later in discussing whether a video
tape of Norman's testimony that was asked by the
jury to be replayed, the following discussion
occurred regarding the prosecutor's inappropriate com-
ment between the Circuit Court Judge Shirley M. Watts
and the ASA Grant McDaniel as follows. (See
December 19, 2005 Transcripts at pg. 91 17-
25 and pg. 92 1-12). Despite the extreme
prejudicial nature of the State's Attorney's

Continuation Page #26

comment , trial counsel merely objected and for
whatever reason refused to request a mistrial and
did not even seek a curative instruction for the
jury to disregard such an extra-prejudicial comment.
It is telling that during the Motion For A New
Trial hearing , the trial judge commented by
stating , And had there been a motion for a
mistrial by Mr. Rosenberg at that time , I
( Judge Watts ) , would have given it very serious
consideration based on the Bryant holding . The
Court is referring to Bryant v. State , 129 Md.
App. 150 , 741 A. 2d 495 ( 1999 ) case .
( Also see March 7, 2006 Transcripts at pg. 80 :
25 - 81 : 1-13 ) Unfortunately , for the appellant
, the court went on to hold that " any " relief
beyond the mere objection had been waived because
trial counsel failed to file a timely motion to move
for a mistrial or " ask for other relief " . Thus ,
the appellant's motion for a new trial was ultimately
denied because of what his trial attorney obviously did
not do . ( See March 24, 2006 Transcripts at pg.
4 and 5 ) . This holding was affirmed / denied
by the Courts so far on every proceeding up to this
point on appeal . ( See Judge Bennett's decision in
Courts Memorandum Opinion on pg. 10 and 11 ) Even
though the District Court Judge Bennett recognized the
[?] was highly inappropriate and that the appel-

Continuation Page # 37

Lail's trial attorney failed to object or request
a mistrial or at the very minimum a curative instruc-
tion for the jury to disregard the remarks made by
the State's prosecutor (The Judge believes Mr.
Rosenberg's Known failure to do nothing to cure the
inappropriate prejudicial remarks emphasized in front of
the jury of alleged witness intimidation was "a
strategic decision" by trial counsel, and he uses
the Motion For New Trial Transcripts on pages 76:
3-5 and pg. 77 6-7 as the reason for this de-
cision made by Judge Bennett, but if the higher
Courts will review the proper records cited the Courts
should re-evaluate the wrongful decision made by
the Post-Conviction State and Federal courts hope-
fully. (See Also the same transcripts as quoted by
the District Court Judge - March 1, 2006 at pg. 75,
76 : 1 25 especially pg. 76 : 23-24 and pg. 77
1-7 ) On page 75 : 22-25 at Ld. Judge
Watts poses a good question to Mr. Rosenberg per-
taining to Appellant's trial attorney not requesting
a mistrial or at the least a curative instruction,
and trial counsel's response was, "Well, I
don't Know." There is no conceivable reason as
to why the appellant's trial counsel would not ask
for such relief after the ASA Mr. McDaniel made
such inappropriate prejudicial comments. Trial counsel
was clearly ineffective, thus making the appel-

Continuation Page # 39

lant's trial unfair and tainted by constantly
making error after error after error , so not
asking for a mistrial or a curative instruction
after not having "extremely important photographs"
( of April 1, 2005 and May 2, 2005 ) ( and medi-
cal records " , along with not gathering impeachable
information to attack the credibility of the victim
( Mr. Davis ) , plus , allowing the erroneous jury
instruction by failing to object all shows and proves
that Mr. Rosenberg ( trial counsel ) was way below
professional norms and very much inadequate and
unprepared to properly represent the appellant . Mr.
Rosenberg was and is extremely ineffective and
the appellant has proven both of the high standards
( each prong ) when it pertains to the Strickland
case . ( Appellant is citing Strickland v. Washing-
ton , 466 US , at 693 , 694 , 668 , 1681 )
( 1984 case ) . ) The Courts are constantly disre-
garding the Appellant's actual transcribed records
( pertaining all the many errors that occurred con-
tinuously and constant throughout appellant's ini-
tial trial dates , but yet the Courts have con-
stantly denied the appellant's requested pertaining
to such errors that occurred during Mr. Gaffney's
trial , and by doing so the Courts have erro-
neously mis-applied known Federal and State pre-
cedented law and appellant is , according to the

Continuation Page #34

law , unlawfully convicted . This case is extremely
weak with many inconsistencies and contradictions on
the base of a shaky foundation of a sole eyewitness
who was equivocal in his identification of the appellant
as the allege shooter and was not 100% for certain
that the appellant was the suspect sought after by
the police especially after is testifying in such am-
biguous accounts of what exactly happened on April 27,
2005 , the night Mr. Davis was shot by stating such
things as ( in Mr. Norman's own words ) , the
photo ( array ) differed from the appearance of the
actual shooter , who didn't have on a red hat because
if he had on a red hat how else would I know he
( the so-called " shooter " , the appellant ) had corn-
rows ... ; " I picked the one just with the closest
resemblance ... " , " the guy who looks like the
shooter " , compared to the guy who shot Marcus Davis
" with cornrows " , but " I don't know . I've seen
that face before ... " Such an identification is
what makes this case so " controversial " so far in all
the Courts decisions because objectively According to
the evidence that was later submitted and accepted
by the Courts pertaining to the April 7th , and
May 3rd , 2005 photographs , ( See Issue #1 for
the following Exhibits and Transcripts related to this
argument ) , coupled with the photograph of the ap-
pellant with braids in his hair from an earlier incar-

Continuation #40 — Federal Habeas Corpus Petition - Issue #5
Page

lated arrest which was undated with no Central
Booking identification numbers to verify the time or
date the photo was taken. But, it is clearly under-
stood that McDaniel, the State's Attorney gave the
appellant's trial counsel ( Mr. Rosenberg ) the photo of
the appellant with braided cornrows in his hair from an
unrelated case to convince the trial attorney that this
was the appellant's appearance at the time of his
arrest and at the time of the shooting, which was
clearly inaccurately incorrect, so the court can't
take this lightly that this was a case with a shaky
foundation (and the State did not prove its case beyond
a reasonable doubt to sustain a conviction accor-
ding to the law. By the appellant's trial counsel
failing to utilize, properly investigate, and obtain
exculpatory information and critical evidence to strengthen
their the defense's case for a possible acquittal IN
the appellant that was needed to do so in a timely
fashion through subpoenas, trial counsel was greatly
ineffective (by leaving the appellant vulnerable to such
inappropriate tactics by the State's behalf according to
the trial counsel ( review all related issues carefully)
through transcripts supplied in the Appendix / Addendum ).
According to the court documented transcripts, the
ASA prosecutor Mr. McDaniel, out of mere despe-
ration to seek a conviction by any means put the

Continuation Page #41

dividual by bringing to the jury's attention that the
Appellant was trying to obstruct justice through witness
intimidation and such an allegation was extremely offen-
sive to the Honorable Courts, the Honorable Judge
presiding and to the appellant first and foremost.
The inappropriate accusation by the ASA Mr. McDaniel
was extra-prejudicial and inflammatory on many levels
and such a claim was not supported by any evidence in
the related case. It was shamefully inappropriate for
Mr. McDaniel to do such a thing in front of the
twelve jurors during his closing arguments right be-
fore he closed his case for the State, placing into
the sub-consciousness of each juror that the appellant
that the appellant was threatening to bring some sort
of harm to the witness for being so brave as to tes-
tify against the appellant in court, especially when
the jurors from Baltimore City or surrounding areas are
well aware of the "Stop Snitching" epidemic through
the local media and the newspapers and the lawmakers
and officials who are protecting witnesses of possible
witness intimidation from lawbreaking criminals to
actually obstruct justice literally. The appellant, Mr.
Gaffney did not attempt in no ways to do such a
corrupt thing, and let it be known on the record
that the appellant turned himself in to the authorities
of the Baltimore City Police Department in Baltimore
County at the mother's house of the appellant be-

Continuation Page # 42

cause several times on the record the appellant declares
his actual innocence and tries to convince the jury be-
fore and after trial including the respected Courts
on each level that the appellant was and is not the
perpetrator of the Davis shooting. ( See All Tran-
scripts of the appellant claiming his actual innocence
and accurate proof that the appellant turned himself in to
BCPD - Appellant turning himself in December 15, 2005
Transcripts at pg. 64 and 65 in its entirety and Dealing
with the appealing appellant claiming actual innocence -
Motion For New Trial - March 24, 2006 at pg. 45:
3 - 25 and 46: 1 - 20 ) As the transcripts clearly
reflects since trial was in session back in 2005,
none of these factual issues are "new" to the respected
Courts because the Courts were well aware of all mis-
representation claims of trial counsel's performance by
the appellant for almost 9 years, but the Courts on
each level refuse to be accurately aware of the
Appellant's unjust conviction due to many errors and
inconsistent testimony and not to mention that the
victim Marcus Davis did not testify period as to who
was the actual shooter, and because so many extreme
-ly awful things took place during the appellant first
trial then, the Courts should at the least do a
thorough investigate and re - evaluate all the testimony
and evidence in its entirety and re - consider the ap-
pellant's current conviction and reward the Appellant

Continuation Page #43

a new trial. The reason why the appellant should be granted relief by the higher Courts Federally are obvious. Especially, when it comes to this issue in reference to the improper statements made by the ASA Mr. McDaniel the State's Attorney's highly inflammatory statements were problematic on many levels. Initially, the statement attempted to explain the absence of other witnesses including Mr. Davis, the victim. And, squarely placing the blame of this on the appellant, but these accusations were unsupported by any evidence in which the trial judge Honorable Shirley Watts acknowledges this. (See December 19, 2005 - Trial Transcripts at pg. 41:17 - 25 and 42: 1-12). Secondly, the statement fiercely implied that the appellant was engaging in conduct to intimidate a witness before the(Any standing officers of the Court with great integrity, and the jury heard many direct emphasis Of the appellant attempting to kill Mr. Davis before the inappropriate outburst was spoken of by Mr. McDaniel. (See December 19, 2005 Transcripts at pg. 44: 1-24, pg. 50: 4-24, pg. 50: 25 - 51: 1-10 and pg. 52: 1-2, Also See when the inappropriate comment was made on pg. 77: 4-16). Although, the State's Attorney initial comments were appropriate according to the Trial Court Judge Watts, even Judge Watts wasn't able to prepare for what would be said next because it

Continuation Page #44

caught the Court's off guard and by storm ,
AND to make matters even Worse during the entire closing
argument on the State's behalf Mr. McDaniel re-
peatedly stated either , "Mr. Norman was scared" ,
the appellant (Mr. Godfrey) was trying to kill
Marcus Davis and how he was shot multiple times in
front of many others along with Mr. Norman" , and
how Mr. Norman wanted to be anywhere but there
testifying in Court , but he (Mr. Norman) had
the courage to do so by testifying as Mr. Norman
so bravely did , then came the inappropiate statement
of witness intimidation with no logical reason or evi-
dence to any proof of any alleged accusations of
witness intimidation . ( December 19, 2005 at pg.
77 : 4-16 ) This inflammatory argument should have
not have been addressed to the jury or taken into con-
sideration as evidence to the jury , but the jury
heard it and the jury was not instructed to strike
that comment from the record , so the statement was
so prejudicial that trial counsel should have requested
a mistrial which should have been granted . As the
7th Circuit aptly noted in Joseph v. Brieten , 739
F. ) d 1344 ( 7th Cir. 1984 ) Applies . " Telling a
jury not to think about something may simply rivet
the jurors' attention to it . Nevertheless , this
type of instruction is given all the time , and
sometimes , one imagine , it works - not because

Continuation Page #45

it literally makes the jury forget something it has
heard, but because a conscientious jury, like a
conscientious judge, will not try to be influenced
by something that it knows is extraneous to its
responsibilities, and will sometimes succeed. But
the efficacy of such an instruction is always un-
certain, and where the misconduct giving rise to
it is as serious as it was in this case (stronger
medicine may be needed." See Also - Davidson v.
Smith, 9 F. 3d 4, 8 (2d Cir. 1993) -
(" In a case where a witness testified that the
plaintiff was previously in the Mattenwan State Hospi-
tal for the Criminally Insane, the Court held
"a curative instruction (was) not a sufficient
remedy"); United States v. DeDominicis,
332 F. 2d 207, 209 (2d Cir. 1964) - ("
" Court erred in denying mistrial because the improper
evidence was so prejudicial that the jury was un-
likely to be able to erase it from their minds"");
Lawson v. State, 389 Md. 570, 599, 886
A. 2d 876, 893 (2005) - (" The prosecutor in-
tiated a statement insinuated that the defendant
would commit future criminal acts was ' highly
prejudicial to the defendant ' ") In its own
written opinion, the Post-Conviction court made its
own 'terrible mistakes'. The post - conviction court
erroneously found " In this case , after the pro-

Continuation Page #46

secutor made the objectionable remark about the
courtroom observers. After the trial counsel noted
objection, the trial judge aptly instructed the jury
to disregard the remark in determining Petitioner's
guilt or innocence." (Post-Conviction Court's
Opinion pg. 19) (Also review Post-Conviction Court's
Opinion by Judge White on pg. 17) (emphasis sup-
plied). The judge erroneously states in her conclusion
" The trial court promptly and properly explained
that the actions of the observers in the courtroom
(and attribution to Petitioner) was not evidence in
the case and is not certainly something the jury
should be considering when determining guilt or in-
nocence, and is certainly not something that [you]
(the singular word "you" was removed in the Courts' Opin-
ion, the word "you" was being directed to Mr. Mc-
Daniel, not the jury) should have [been] argued
to the jury." (Also see December 19, 2005 Transcripts
at pg. 91: 17-25 and 92: 1-12 - The judge,
Honorable Judge White quotes this transcribed statement
as the basis of her erroneous litigation because the
Post-Conviction judge believes this was being stated
directly to the jury, but this is far from cor-
rect. This was being strictly and personally di-
rected to the ASA Mr. McDaniel, so the court
never instructed the jury to disregard the remarks -
" This simply Never Happened ", however, the

Continuation Page # 47

comments made on the record were not addressed to
the jury, only to the counsels. Please review care-
fully pg. 90 of December 19th, 2005 Transcripts,
on line # 9, it states clearly, "The jury was
not present upon recovening", and the record also
notes that this occurred between the time of 4:00 pm
and 4:30 pm after a brief recess. (Also see Courts
decision on denying the Appellant's Motion For A New
Trial - March 14th, 2006 on pg. 5: 1-9.)
Here, while discussing whether if the jury could
re-hear Mr. Norman's testimony again (this refers
to the two questions asked by the jury in the form
of a note during their deliberations seeking clarity
between the jury instructions involving first and second
degree attempt murder and the hearing of Brian Norman's
testimony again), and according to the transcribed
records, the first question was answered in the form
of a note pertaining to the jury instructions from the
Maryland Pattern Jury Instructions, but unfortunately
the written instruction excluded the same omitted
sentence, thus never truly giving the jury the
clarification sought after (See This Related Issue
# 3). As for the second question pertaining to the
viewing of Mr. Norman's testimony, this request
was initially granted but later denied for several key
reasons. The judge declared that the jury should
not be able to hear the bench conferences, even though

Continuation Page #48

A big white sheet was over the screen. Secondly, the viewing of Mr. Norman's testimony was denied to the jury because if they would have been able to review it then, they would have been able to see during Mr. Norman's live testimony, the appellant's family member answer their phones (not to interrupt the trial hearing) and exit the courtroom, but due to Mr. McDaniel's inflammatory prejudicial statement, the jury would've saw what Mr. McDaniel offensively called "witness intimidation." Review Issue #3 pertaining to the same transcripts from December 15, correction 19th, 2005 starting at page 83 to page 100 and these transcripts will show you the several discussions that took place pertaining to these important issues proving just how ineffective the trial counsel of the appellant truly was. (read pages 91 to 95 and page 100 to verify Judge Watt's denials to question #2 from the note to the jury) Even after all this occurred, trial counsel still failed to request a mistrial or at the minimum ask for a curative instruction, even after hearing the judge, the Honorable Shirley M. Watts reprimand the prosecutor for making extra prejudicial inflammatory statements. This cannot be considered as trial counsel's sound trial strategy. By this time, the appellant had no chance of a fair trial, and "guilty" finding was inevitable. Thus, the

Continuation Page # 49

post-conviction court's forcibly erroneous finding is objectionably unreasonable. The bare objection by Mr. Rosenberg, even though it was sustained, did nothing to dilute the effect of this highly prejudicial comment to the jury. Rather, the jury was simply left with the impression that the appellant (Mr. Gaffney) allegedly tried to kill Marcus Davis after shooting Mr. Davis multiple times at close range, and was the reason why other witness didn't show up including the victim Mr. Davis, but to make matters even worse, the jury was left with the impression that the appellant was threatening to bring harm through intimidation to the sole eyewitness Mr. Norman and others which would expose the appellant to an improper inference that such intimidation of a witness was necessary because of the Petitioner's guilt. Such an erroneous inference by the jury could have been the single factor that led to Mr. Gaffney (the Petitioner) conviction, thereby constituting sufficient prejudice to establish ineffective assistance of counsel. Thus, the post-conviction court's factual finding that the jury was admonished to disregard the improper and prejudicial remark is objectively unreasonable as is the post-conviction court's conclusion that because of the admonishment, trial counsel exercised "sound professional judgment". Thus, the appellant's conviction should be vacated,

Continuation Page #50

... on this issue the higher Courts should grant the
appellant proper relief.

Issue #6 - Federal Habeas Corpus - Continuation #51

Trial counsel and appellate counsel were ineffective for failing to raise the issue of improper polling or hearkening of the jury, which occurred in the appellant's trial, which constitutes an illegal sentence. Trial and/or appellate counsel were ineffective for failing to raise the issue of improper polling and hearkening of the jury. When a defective polling or hearkening occurs, any sentence imposed on those counts constitutes an illegal sentence. After the verdict was read by the foreperson for the 6 of 8 counts in which verdicts were returned, an attempt polling of the jury was conducted, as well as an attempt hearkening. (See December 14, 2005 transcripts at pages 102 thru 106) The polling of the jury consisted as follows:

The Clerk: You may be seated.
Do you wish a poll?
Juror Number #2, you've heard the verdict of your Foreman, is your verdict the same?

A Juror: Yes.

The court clerk then polled the remaining 10 jurors in the same manner and received the same generic answers of "yes", except when Juror #12 stated, "same". Recently, in Santiago's case (referring to State v. Santiago, 412 Md. 28, 845

Continuation Page # 52

A.2d 556 (2009) ). The Court of Appeals held that a defendant was entitled to a new trial where the jury was not polled and the verdict was not hearkened even though the defendant failed to request that the court poll the jury and did not object to the fact that the clerk did not hearken the verdict. In essence, the court in Santiago's case held that this procedure could not be waived by the defendant." In Jones v. State, 384 Md. 669, 866 A.2d 151 (2005), the Court of Appeals of Maryland explained that the procedure for returning a verdict is of common law origin. The court established a three-step process for returning and recording a verdict. Id. at 680 - 685, 866 A.2d at 157 - 161. The first step is that the jury is required to orally announce its verdict in open court. The second step is polling the jury (if requested by a party or on the court's own initiative) to ensure an unanimous verdict. The demand to poll the jury may be made at any time in the proceeding prior to the discharge of the jury. Id. at 684, 866 A.2d at 160. The third step is that jury is to hearken to its verdict, in order to 'se-cure certainty and accuracy, and to enable the jury to correct a verdict, which may have been mistaken, which their foreman has improperly de-livered.' Id. at 684, 866 A.2d at 160 (citing Smith v. State, 144 Md. 158, 165, 472 A.2d

Continuation Page # 53

988, 991 (1984).) While the courts of Maryland have not adopted a particular procedure for hearkening and there is no reference in Maryland rules regarding hearkening, "the process generally requires the jurors to assent to the verdict in the manner in which it was stated by the foreman and accepted by the court." Id. (emphasis supplied) In terms of polling, in Ford v. State, 12 Md. 514 (1859), the Court of Appeals determined whether a jury was properly polled when the defendant was convicted of murder. In particular, the jury foreman in Ford answered, "Guilty of murder in the first degree" but each of the remaining eleven jurors responded merely, "Guilty." Id. at 548. The Court of Appeals held that on these facts, the defendant's right to jury unanimity had been violated. "The verdict is the unanimous decision made by a jury and reported to the court, on matters lawfully submitted to them in the course of the trial. Unanimity is indispensable to the sufficiency of the verdict, and this, we have seen, has not been before us." Rice v. State, 311 Md. 116, 128-129, 532 A.2d 1357, 1363 (1987); (citing Ford v. State, 12 Md. 514, 549 (1859).) Likewise, in Williams v. State, 60 Md. 402 (1883), the Court held, "upon the poll it was the duty of each juror, when called upon to say for himself (and in his own language), whether he

Continuation Page #54

found the prisoner guilty of murder in the first or second degree. "Id. The verdict declared by the foreperson was guilty of "murder in the first degree." Id. During the poll, the jurors responded "guilty." Where the response of each juror is simply "guilty" without a designation of the degree of guilt, such a verdict is a nullity." The fact that the clerk, immediately after polling the jury, called upon them to hearken to the verdict as the court had recorded it — "your foreman saith that Jason Williams, the prisoner at bar, is guilty of murder in the first degree and so say you all", — does not affect the question. Id. Here (as in the Ford and Williams cases), the verdict rendered after the jury poll was fatally defective. Thus, the trial and appellate counsels were ineffective in failing to raise this issue. While the particular holdings of Ford and Williams are dated (154 yrs. back), these cases have been cited authoritatively as recently as December 21, 2009, in the Santiago case. Moreover, in a recent post-conviction matter, the Circuit Court for Baltimore City granted a defendant a new trial for a man arrested after 19 yrs. all because one of the 12 jurors was not polled. (See State of Maryland v. Glenn Dale Truly, in the Circuit Court for Baltimore City, Criminal Case # 18933314. Post-Conviction No. 10129 (April 17, 2009).) The particular

Continuation Page # 55

error that occurred in the appellant's case is that the jurors during the polling phase, were never required to say for themselves the verdicts as to each specific count, but rather, only all six counts in the aggregate. Additionally, the jurors were not required to specify if the attempt murder was in the first or second degree as explicitly required in Ford and Williams. Consequently, just like the Courts in Ford and in Williams, the Court in the appellant's (Mr. Haffney's) case, simply failed to read back to the jury its verdict, "as stated by the foreman and accepted by the court", but instead generally allowed each juror to state the equivalent that the appellant was merely "guilty" of all charges, and that it assumed all six counts that had been rendered against the appellant including first degree attempt murder without specifying the degree of guilt for each and every count individually. Each juror didn't have the opportunity to review each of their verdicts as an individual juror and "when called upon answer for themselves and in their own language" at either the polling or hearkening phase. Williams v. State, 60 Md. 402 (1883). This generalization, without particularizing each count of the verdict of the jury, renders the polling defective as set forth in Ford and Williams. While a hearkening will not save a defective poll, (see Williams v. State), here in the Petitioner's case, the hearkening of the jury

Continuation Page #56

was also defective because the record does not establish
that the jurors ever responded to hearkening. The record is
simply silent after the Court clerk hearkens the jury
and does not record any response of the jurors. After
the question asked by the clerk, "So say you all,"
during the hearkening phase, the jury should have responded
"Yes (collectively, at least)", but they failed
to do so. Consequently, the silent record cannot
establish that an appropriate hearkening occurred, and
since the jury was not properly polled nor was the
verdict properly hearkened, there is no indication that
the verdict was unanimous and, therefore, the
conviction is void and must be reversed and vacated.
( See Santiago's case ) The post-conviction Judge
White concluded, "Trial counsel did not make any ob-
jection to the proceedings to poll the jury or hearken the
verdict." Judge White in the Courts' decision further
concluded, "The jurors were not required to specify,
as to each count, or to specify the degree of the
charge; the foreperson specified to them already,
and the polling was only to ensure that they agreed with
what the foreperson had already said. The post
conviction Court, wrongfully applied the law as it's
clearly litigated in many other cases pertaining to the
same exact error, as in the appellant's case here.
( See Post-Conviction in the state courts' Opinion by Judge
White on pg. 21 and 22 ). On the same page 22,

Continuation Page #57

Judge White also states explicitly, "Petitioner claims that the 'hearkening' of the jury was defectively silent on the record, when the transcript does not attribute any response or reaction of the jury to the clerk." And so say you all .... This court finds that the jury was properly hearkened by the courtroom clerk." Judge White is on the record clarifying the appellant's exact argument on the issue (pg. 21-23) at hand, that the jury did not designate the degree of guilt or specify each count in the verdict for secure accuracy and the proper recordation of the verdict, and to make the decision by the Honorable Judge White even more erroneous, the Court recognizes the complete silence after the clerk ask the jury the most important question in the verdict, the hearkening phase by saying "And so say you all?" In the Appellant's case on the transcribed record it says nothing at all after that question is posed to the 12 jurors as a whole, so there is no need to speculate or assume that they did so when the record does not reflects such an in-correct theory. With respects to the Courts, the Appellant's verdict is a nullity and void and must be vacated. The District Courts' decisions was brief when it came to this issue and the District Court Judge Bennett stated in his conclusion the federal Court's stance when it comes to the District Courts or the 4th Circuit's high standards of requirements.

Continuation Page #58

As discussed before, the Federal Court's review of
a state court's analysis of state law focuses only on
determining whether the conviction violated the United
States law or the Constitution. The amendments to 28
U.S.C. § 2254 enacted as part of the AEDPA states
as provided, "(d) An application for writ of Habeas
corpus on behalf of a person in custody pursuant to the
judgment of a state court shall not be granted with re-
spect to any claim that was adjudicated on the merits
in State court proceedings unless the adjudication of
the claim. (1) resulted in a decision that was con-
trary to, or involved an unreasonable application of
clearly established Federal law, as determined
by the Supreme Court of the United States; or (2)
resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence pre-
sented in the State court proceeding." And, since the
appellant has a very concise understanding of the Fede-
ral Court's high standards under this amendment
then, the appellant must strongly prove such claims
for the Federal Court to overturn a State's analysis
basically already "properly" litigated, but in
the appellant's current case "clearly established
Federal Law as determined by the Supreme Court"
has been "unreasonably" applied in the Petitioner's case
and the result in this decision by the Post-Conviction
and District Court was "contrary to" precedented

Continuation Page #59

Federal law under the 6th Amendment. (See Strickland
v. Washington, 466 U.S. 668, 687 (1984).)
In the context of a 2254 Motion For Federal Habeas Corpus
proceeding, it is not sufficient to convince the Federal
Habeas Court that the state court merely applied Strick-
land incorrectly. Rather, a petitioner must show
the state court applied Strickland to the facts in a
objectively unreasonable manner. (See Bell v. Cone
535 U.S., 698-699 (2002).) Therefore,
since the Federal Courts hold such high standards for them
to intervene in a State Court case, in order to be reviewed
the appellant has the hardest burden to prove by convin-
cing the Federal Court that the Post Conviction court
erred on the side of caution and rendered a verdict or
decision objectively unreasonable not based on the facts pre-
sented by the appellant placed before the Courts, and
simply ruled wrongly by not finding trial counsel ineffective
for failing to object to the improper poll and hearkening
pattern by the jurors in the presence of the court while
appellant's trial attorney failed to reserve the issue
also for Appeal, just in case. Also, the appellate
attorney failed to raise the issue for appeal, thus
making the appellate attorney for the petitioner ineffec-
tive, too. The appellant has demonstrated to the court
his prerequisite(s) and fulfilled his obligation, so the
conclusion by the Circuit Court and District Court was
just plain out wrong. The Opinions were contrary to,

Continuation Page # 60

The reflective transcripts and Judge White acknowledge the errors, yet ignored them, and the Court refuses to correct the error by ruling contrary to precedented Federal and State law under the very strict requirements in Strickland v. Washington because the appellant has met recommended demand by both Courts. Appellant has proven his claims of prejudice of an unfair trial according to the high standard of the Federal 2254 Habeas Motion. The conviction would have been undoubtedly vacated had the issue been raised by either attorney on appeal because there is, without question, a reasonable possibility of success on appeal. The question may arise was trial counsel deficient / ineffective for failing to object to the lack of jury unanimity under the Strickland v. Washington standard. Although, it was litigated in the State courts, the court in Truley's Post-Conviction stated:

"In order to establish deficiency the defendant has the burden of establishing the following: 1) identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professionalism and judgment; 2) show that counsel was not functioning as trial counsel is guaranteed under the 6th Amendment — that considering the circumstances, the representation fell below an objective standard of reasonableness; and 3) overcome the presumption that under the circumstances challenged action might be considered sound trial strategy. See Harris v. State,

Continuation Page: #61

203 Md. 685, 696 (1985). Id. @ 697. (emphasis supplied) " Also, in Truley's case the Petitioner identified counsel's failure to object to the non-polling of juror #4 as the act that was not the result of reasonable professional judgment.; see also - Perry v. State 357 Md. 31 ✓ ✓ (1999). In Truley's case, the decision by the Court stated, "The Court of Appeals, mindful of " firmness of the unanimity requirement ", reiterated that a juror's assent must be free and unqualified and that " .... apply, for it takes but one juror to threaten the constitutional requirement of unanimous verdict. " See Lattisaw v. State, 329 Md. @ 345-46 (emphasis added). The Court further stated, "This court is careful not to second-guess trial counsel's assistance however in reconstructing the circumstances of counsel's alleged conduct from counsel's perspective at the time. This court finds that for counsel not to object to a non-unanimous jury verdict fell below an objective standard of reasonableness. Additionally, under the circumstances, the court finds no sound trial strategy for counsel not to demand an unanimous verdict from the jury. " As a result, in the appellant's case, the Court should have found trial counsel's failure to object to an improper poll and a silent hearken by the jury after the clerk rambled off counts which was believed to be an unanimous verdict, deficient.

Continuation Page # 6)

For an unanimous verdict is a fundamental constitution and right guaranteed to all defendants in All criminal cases. Likewise as to the petitioner's case. See also - State v. McKay 280 Md. 558, 572 (1977), it reads clearly, "holding a criminal defendant may only waive the right to an unanimous jury verdict if it is done incompetently and intelligently." In the appellant's case, Gaffney, on record has not made any waiver to this issue (or no issues) whatsoever, therefore the unanimous verdict required to ensure the appellant received a fair trial was absent because the record does not reflect an unanimous verdict. the caselaw case states, "No Maryland case has ever presented the situation in which a juror's equivocal response to a poll calls into question the unanimity of a verdict. However, we have stated that where a jury's verdict as a whole is ambiguous inconsistent or unresponsive, or otherwise defective, it is the duty of the trial judge to call to the jury's attention to the defect and to direct them to put the verdict in proper form or either in the presence of the court by returning to the consultation room for the purpose of further deliberation." Thus, trial counsel was very much ineffective for failing to object to the silent hearkening phase alone. The True test of polling and hearkening of the jury comes when it is administered individually. Clearly, the poll

Continuation Page # 63

and the hearkening phase of the verdict by the jurors
, as it occurred here , is defective . Because
neither procedure was complied with , the verdict was
never properly recorded and there is no indication that
the verdict was unanimous . The conviction , is there-
fore , void , defective , and should be reversed
by the Federal Court . Furthermore , there is no con-
ceivable reason not to have raised this issue on appeal
. The issue wasn't raised . The case law at the time
of Petitioner's trial consisted of Ford v . State ,
Givens v . State , 76 Md . 485 , 487 ( 1893 ) ,
discussed in the Tyshawn opinion . ( referring to Ty-
shawn Jones v . State , 173 Md . App . 430 , 457 ,
920 A . 2d 1 , 16 ( 2007 ) ; also see Jones v .
State , 384 Md . 686 , 866 A . 2d 161 ( Tyshawn
Jones cites Kerwin Jone's 2005 case ) - The Court
of Special Appeals , as well as the Court of Appeals ,
has held that any sentence imposed in absence of a pro-
per jury poll or proper hearkening of a verdict is an
illegal sentence and should be vacated ; ( a verdict
that has not been followed by either a polling or hear-
kening has not been properly rendered and recorded and
is a nullity . ) Jones v . State ( 2005 ) - Both
Tyshawn and Kerwin Jones case , the Court recog-
nized that an objection was not required in order
to review this issue on appeal; for different reasons .
In the case of an illegal sentence , An objection by

Continuation Page # 64

trial counsel is not required. - Tyshawn and Kenan
Jones citing Ridgeway v. State, 369 Md. 165,
171 (2002); Additionally, in the Appellant's cur-
rent case at hand, the failure to properly hearken
a verdict in absence of a poll constitutes plain error
thus exercising the failure to object, and results
in a remand for a new trial. (See e.g. Ty-
shawn Jones). In conclusion, the Post Conviction
court ignored the holdings of Williams and Ford in
finding that the jurors were not required to specify
as to each count, or specify the degree of the charge
(Post-Conviction Opinion at pg. 12). this is not
the law as noted by the Court of Appeals, likewise,
the Post-Conviction court ignored the explicit holding
of the Court of Appeals provided in Jones v. State,
384 Md. at 684, 866 A.2d at 160 (2005),
which provided that "the (hearkening) process
generally requires the jurors to assent to the verdict."
However, here in the Petitioner's, Mr. Gaffney's
case, the Post-Conviction court Heard and hears
a hearkening in which no assent by the jury as
a collective body is recorded, even after the
Judge Pamela White recognized no commentative re-
sponse is on the record. At this phase, only the
court clerk is recorded in the record talking,
there is no response from the jury, at all
December 19, 2005 transcripts on pg. 165. 16-19.

Continuation Page # 65

In Petitioner's Gaffney's case, similarities between his jury polling and hearkening and the many other cases therein reveals a pattern within the Circuit Court system that this constitutional right is not being respected to the letter of the law and that is why the Appellant deserves to be granted relief. Consequently, the Post Conviction Judge Pamela White conclusion that, the trial counsel for the appellant was not ineffective is based solely upon the objectively unreasonable finding that a proper polling and hearkening of the jury occurred in the Petitioner's case, the post conviction court objectively failed to properly apply Strickland. The appellant pray the Federal Court correct this illegal sentence / conviction that's void.

(See Md. Rule 4-345 (a) - Illegal Sentence)

Note: Contemporaneous with the filing of the Supplemental Petition for Post-Conviction Relief, Mr. Gaffney filed a Motion to Correct an Illegal Sentence, which incorporates the arguments regarding the improper polling and hearkening of the jury. In her Opinion, Judge White denied the Petitioner's Motion To Correct An Illegal Sentence. See Post-Conviction Court's Opinion at pg. 22 n. 2. Mr. Gaffney the Appellant, has filed a separated Notice of Appeal from Denial of the Motion To Correct An Il

Continuation Page # 66

Illegal Sentence   which is still pending since January
15, 2013 in the Court of Special Appeals of Maryland.

Issue 7

Issue #7 - Federal Habeas Corpus Continuation Page # 67

The cumulative effect of trial counsel's errors esta-
blishes that the representation of the Petitioner Mr.
Gaffney was constitutionally ineffective. The Govern-
ment argues that the 4th Circuit does not recognize
the cumulative effect error doctrine, citing Fisher
v. Angelone, 163 F.3d 835, 852-853 (4th
Cir. 1998). However, the Fisher opinion focused
on the first prong of Strickland. That if counsel's
performance is not objectively unreasonable on each in-
dividual claim, a cumulative analysis would not
affect that conclusion. In United States v. Russell,
34 Fed. Appx. 927, 928 (4th Cir. 2002),
the 4th Circuit (in an unreported opinion) distin-
guished Fisher and held, "assuming - as the District
Court did in addressing each of these claims - that
trial counsel's performance was deficient in each
of these instances, <u>cumulatively</u> (defendant) could
show prejudice." Thus, as majority of the courts
have recognized, the 4th Circuit <u>in Russell</u> allows a
cumulative analysis to determine the prejudice prong of
<u>Strickland</u>. See also - <u>Bowers v. State</u>, 320 Md.
at 426 - 437, 578 A.2d at 744, ("even when
individual errors may not be sufficient to cross the
threshold, their cumulative effect may be"),
People v. Lee, 185 Ill. App. 3d 420, 133 Ill.
App. 2d 421, Ill. Dec. 526, 541 N.E. 2d
747 (1989) (inexperienced trial counsel did not chal-

Continuation Page # 68

tenge competence of a witness, failed to investigate witness's criminal history, failed to impeach witness, to cross examine him properly, and to give opening statement; representation found constitutionally inadequate ); Smith v. State 547 N.E. 2d 817 ( Ind. 1989 ) ( ineffective assistance of counsel where attorney failed to tender jury instructions on alibi defense, failed to impeach key witness's inconsistent testimony, failed to respond to witness's remarks about taking polygraph test, and failed to present mitigating evidence in sentencing phase ); People v. Cole 775 P.2d 551 558 ( Colo. 1989 ) ( ineffective assistance where counsel " failed to interview witnesses before trial, did no legal research, and failed to consult experts " ); Yarbrough v. State, 529 So. 2d 659 ( Miss. 1988 ) ( defense counsel failed to subpoena witnesses until the day of trial, failed to sufficiently question the one witness he did call, failed to request pre-trial suppression and failed to file jury instructions, among other problems resulted in denial of effective assistance ); People v. Trait, 139 A.D. 2d 937, 527 N.Y.S. 2d 920, 921 ( N.Y. App. Div. 1988 ) ( defense counsel's ineptly developed opening statement, inadequate trial preparation, failure to appear in opposition to People's motion, excessive

Continuation Page # 69

and purposeless cross-examination", in addition
to other factors, deprived defendant of constitutional
right to effective counsel), Doherty v. State,
781 S.W. 2d 439, 442 (Tx. Ct. App. 1989)
(ineffective assistance where defense counsel "did
not consult with appellant's first trial counsel,
did not consult with appellant's investigator, did not
talk to any of the State's witnesses prior to trial,
did not subpoena any witnesses, and failed to
properly investigate another possible suspect, an alibi
witness and fact witnesses".) The post-convic-
tion court, in reviewing the cumulative effect,
made the following remarkable and erroneous statement
: "Petitioner has failed to identify any acts or
omissions that was not the result of trial counsel's
professional judgment." (Post-Conviction Court's
Opinion at pg 93). Judge Pamela White further says
, "These cases (the Appellant is quoting for usage)
are not relevant or applicable in the present case. Each
of these cases has identified one or more fatally sub-
stantive error by trial counsel." Judge Pamela White
believes that the Petitioner has failed to prove his claim
of the cumulative error doctrine, but as set forth
above, this finding was objectively unreasonable in
that most of the complained about acts or omissions
by trial counsel were unhesitantly admitted by the
appellant's former attorney Mr. Rosenberg, as if

Continuation Page # 70

There is more doubt from the court that this is not
Mr. Rosenberg stating such words describing his
own performance as " terrible , a lousy job ,
a bad mistake , a terrible mistake , horrible ,
just pure horrible " and not to mention trial counsel
admits . " he ( I ) forgot to present it ( April 7th
2005 photograph of the defendant without braids in his hair
with a short haircut ) 30 days exactly before the
shooting of Mr. Davis ) .... the crux of his whole
case " that was " extremely important "
( See All Related Issues In This Petition Carefully )
The Post - Conviction Court 's Judge White undermines
the appellant Mr. Gaffney 's " totally sub-attentive
errors " in the petitioner 's current case because
there is definitely more than one openly admitted on
record by trial counsel Mr. Rosenberg from out his
own mouth admitting to his own acknowledged errors "
and the petitioner objectionably disagrees with the
court believing that such admittance of their own wrong
theory of what occurred explicitly on record can be
overshadowed by objectively unreasonableness over admis-
sions from appellant's trial counsel ( who admits )
sub-conscious faults . Trial counsel , in seeking
to re - open this defense case at trial , he immediate
- ly describes to the trial court of his " terrible
mistakes " of forgetting a photograph he had , that
his client ( Vont Gaffney / the appellant ) gave him

Continuation Page # 71

prior to the closing of the defense's case on the last day of trial. So if Mr. Rosenberg would have submitted the photograph of April 7th 2005 along with the May 2nd 2005 wristband at the appropiate time with swift competent action, trial counsel would not have to admit to such faults on record or try to beg the Court to "re-open" his defense after closing his defense because he forgot to submit a photo-graph that was extremely important for his defense. Also, trial counsel bears witness that his client (the appellant) Mr. Gaffney gave his trial attorney (Mr. Rosenberg) the April 7, 2005 photograph prior to the closing of his defense. Is what "competent" attorney will forget to do something that importantly to the crux of his whole case then call it "a bad mistake", if it was trial strategy? Especially, after the ASA Mr. McDaniel gives Mr. Rosenberg a photograph that he believed subterfuge the entire case that wasn't relevant to the case nor was it what Mr. Rosenberg was looking for, but it was what Mr. McDaniel wanted to give Mr. Rosenberg after his request for Mr. McDaniel to recover the photo of Mr. Gaffney's arrest, only later to find out that the photo of the appellant with cornrows was not ac-curate of the appellant at time of his arrest. All this could have been easily avoided if trial counsel would have properly investigated and subpoenaed pre-

Continuation Page # 72

dated and post-dated of the appellant to show his
client did not forget to give him what he did not re-
cover on his own) to show the appellant did not fit
the description witnesses described as the shooter
" with cornrows ". By forgetting to introduce the
key piece of evidence that went to the crux of his
whole case, the appellant respectfully asks the Fede-
ral Court, what can be more fatally harmful to
a defense case than something as fatal as that.
( The April 7th, 2005 photo ) ( See December 19, 2005
Transcripts at pg. 30: 4-13 and March 7, 2006 on
pg. 57-58 ). What possible professional judgment
is involved in forgetting to introduce key photographs,
subpoena exculpatory information in the medical re-
cords trial attorney failed to recover prior to trial
knowing he needed them for a better cross-exami-
nation of the sole eyewitness in the case, failed to
object to erroneous first and second degree jury in-
structions in an attempt murder case) failed to gather
impeachable criminal history of the victim or sole eye
-witness on time to attack their credibility,
failed to request a mistrial or curative instructions
after objecting to inflammatory statements by ADA
Mr. McDaniel ( State Prosecutor ) when Judge at
trial would have considered it due to prejudice of
the appellant's right to fair and impartial trial,

Continuation Page #13

the jury's verdict, by trial counsel. The errors made cumulatively in the appellant's case has deprived the petitioner of a fair trial and such collectively errors, if not individually are extremely fatal and harmful to any criminal case especially when life in prison is the extreme penalty for such crimes as the appellant was faced with allegedly. In hindsight, the appellant had no chance to recieve any other outcome than the one the petitioner recieved after his trial counsel was "terribly" incompetent and did a "lousy job" and was clearly ineffective. The appellant should be granted relief on these issues and his sentence should be thrown aside and immediately vacated. The post-conviction court and the District Court failed to explain any possible rationale for failing to submit and accept the April the 7th 2005 photograph, now that they know the photograph is officially authentic and coincides with the appellant's appearance the day he turned himself in to the authorities for a crime he was warranted for allegedly as the shooter, on May 3nd, 2005, and these extremely important photographs, not only contradicts the entire testimony of Mr. Norman identifying the appellant as the guy who looks like the shooter with the closest resemblance to the guy who actually shot Mr. Davis, and but it also contradicts the photograph the State's Attorney gave Mr. Gaffney's trial counsel as his actual ap-

Continuation Page #74

perance at the time of his arrest, when it was proven the State's Attorney was extremely incorrect. The reason why the Courts can't give a good explanation for such fatal errors in the Petitioner's case admitted by trial counsel himself rationally, most likely because no excuse exist that your Courts can actually make sense of. In the Petitioner's case, each of trial counsel's errors set forth herein were prejudicial in their own right but their cumulative effect only increased their prejudicial impact on Mr. Haftney's (the Appellant) right to effective assistance of counsel and a fair and impartial trial. Consequently, the Post-Conviction court's analysis and the District Court's opinion influenced by the State's erroneous application of the laws of the land was badly flawed and the Petitioner's Petition For Habeas Corpus Relief should be granted, Your Honor.

## The Appellant's Request For Relief

The Appellant's Plea For Justice.

With the utmost respect for the United States of America (the country of my birth), the Judicial Branch of this government, which is governed by the laws of this land through legislation for each citizen or subject must abide by under the Amendments of the U.S. Con-
stitution, and this respected Federal Court, I,

Continuation Page #75

Vonte' Gaffney , the Petitioner pray that this Honora-
ble court accept this handwritten , Informal Pre-
liminary Briefing Order Petition as the Petitioner's
pro se petition to protect my rights to an Appeal
to the United States District Court's Memorandum
Opinion that was affirmed by the District Court Judge
Bennett , who ( without a documented reason ) also
denied the Petitioner's option of a certificate of ap-
pealability to re-appeal the Courts decision and ob-
jectively unreasonably informed the Clerk to "Close"
this case on November 20, 2013 . I'm praying that
this , Honorable Court , please re-consider the open-
ing of the Appellant's case to prevent a blatant in-
justice done to the Petitioner in the Circuit Court of
Baltimore City under the provision of Judge Shirley M.
Watts and the conviction was upheld by Judge Pamela
White . I'm praying the 4th Circuit of Maryland Federal
District Court will thoroughly review this case and
re-open the case of the Appellant for a new trial.
I , Vonte' Gaffney , the appellant is very much
unemployed and completely indigent while incarcerated
with no possible income coming in and due to the
poor conditions within State Prison Facilities and In-
stitutions our resources to updated Constitutional law
through the State Facilities law libraries are pretty
much limited and I can no longer afford an attorney be-
cause my support system as I am are poor with limited

Continuation Page # 16

resources as well. I (the petitioner) would like
to retain a lawyer who is 100% competent to represent
me if possible, but if not I'm wishing Your Honor
that, this court will accept this Informal Petition as
my actual petition please. No incompetent attorney should
be allowed to represent me in such a complex case that
needs thorough attention and investment of time to evaluate
properly. Each issue by the hand of the Appellant is
detailed precisely to the core point and each piece of
evidence is clear and concise, so the Petitioner prays
that the 4th Circuit Courts will evaluate, attentively
read each word within each issue, access each issue
thoroughly with the evidence and transcribed records
within the trial or post-trial hearings pertaining to
the case, and render the right decision the 4th Circuit
believes this current case deserves because the Petitioner
believes he have been wrongly mistreated by the said
Courts by objectively unreasonable decisions by the
said Courts, both State and Federal now due to a
mis-application of the law misguided by misunder-
standing and mis-representation (by trial counsel).
So, the Appellant hopes the Court in the 4th Circuit will
re-analyze the errors made by the lower sisterly
Courts or brotherly Courts and investigate the errors the
Appellant presents for clarification because I hereby
verify all the information within is 100% authentic

Continuation Page #77

After this case is carefully read and considered by the Honorable 4th Circuit Court, with honor and the highest morals protected by the integrity of the United State Supreme Court, the petitioner Vonte' Gaffney prays that ultimately Freedom, justice and equality under the Sovereignty of God and the United States Government will finally be obtain through this said Federal Court decision / opinion. The petitioner Mr. Gaffney til this day claims his innocence, and prays that the Courts will for once give him his fair day in Court because in his first trial (as the record shows), the Petitioner was deprived of a fair trial, unfortunately the Appellant requests that the 4th Circuit accepts this petition of Federal Habeas Corpus as such without prejudice due to the fact that it is handwritten by the ink within a "prison cell", and grant the Petitioner the chance to finally receive an "objectively reasonable" hearing without bias to prove all the facts of this case to the 4th Circuit Court of Appeals. The appellant also requests that this Federal Court will protect the rights of an incarcerated young "American" citizen who was and remains a "layman" to the law, I had no other choice but to file this petition in this manner; the order to be denied the right to appeal availability has no been waived in no way shape or form by myself, the Appellant, and therefore, I (Mr. Gaffney) files this petition

Continuation Page #18

within the guidelines / deadline required and prays that the Court will reverse and remand and vacate the sentence / conviction of the said Petitioner, Vonte' Gaffney v. State of Maryland, Case Number #105141030, Due to a gross violation of his 6th Amendment rights to effective assistant of counsel and a right to a fair and impartial trial hearing, and in this case, the law and records will show, this was not so.

Thank You !

X Vonte' Aven Gaffney
_____
Vonte' Aven Gaffney
pro se litigant

Note: Issues #5, 6 and 7 will be attached in sequential order as follows:

Issue 5: pg. 35 - 50 > Issue 7:    Relief Requested - Also See Attachment For More Details:

Issue 6: pg. 51 - 66    pg. 67 - 74    Petitioner respectfully requests a hearing on Habeas Corpus

## 5. Relief Requested -

**Identify the precise action you want the Court of Appeals to take:** For the above stated reasons, Mr. Gaffney Petition For Habeas Corpus should be granted for a new trial.

See Request 74 - for Relief 18

## 6. Prior appeals (for appellants/petitioners only)

A. Have you filed other cases in this Court? Yes [ ] No [X]

B. If you checked YES, what are the case names and docket numbers for those appeals and what was the ultimate disposition of each?

Vonte' Gaffney

Signature

[Notarization Not Required]

Vonte' Avon Gaffney

[Please Print Your Name Here]

## CERTIFICATE OF SERVICE

************************

I certify that on Jan. 1, 2014 I served a copy of this Informal Brief on all parties, addressed as shown below:

Vonte' Avon Gaffney

Signature

Appendix

Page # 1

Federal Habeas Corpus to the Court of Appeals — 4th Circuit

Appendix Attachment : the list of Transcript References

Note to the 4th Circuit Court : Since no Appendix is needed
the Appellant placed all of the transcribed references in
sequential order according to the following issues exactly
as written in the Federal Habeas Corpus Petition . All of the
dates of trial hearings , Court Opinions , and pages
documented are enlisted below accordingly.

A. Issue # 1 - The April 7th 2005 Photograph of Appellant
1. 12 / 15 / 05 - pg. 31 : 15 - 25 and 32 : 2
2. 12 / 15 / 05 - pg. 29 : 9 - 22
3. 12 / 19 / 05 - pg. 51 : 15 - 24
4. 3 / 7 / 06 - pg. 57 : 12
5. 11 / 20 / 13 - District Court Opinion - pg. 7 and 8
6. 3 / 7 / 06 - pg. 7 : 4 - 23
7. 3 / 7 / 06 - pg. 56 : 3 - 25 , pg. 57 : 1 - 16 and
pg. 58 : 1 - 24
8. 12 / 19 / 05 - pg. 30 : 4 - 23
9. 3 / 7 / 06 - pg. 57 : 12 - 16
10. 8 / 11 / 10 - Post - Conviction Opinion - pg. 8 and 9
11. 8 / 11 / 10 - Post - Conviction Opinion - pg. 10
12. 12 / 15 / 05 - pg. 31 : 15 and pg. 51 : 17 - 19
13. 12 / 19 / 05 - pg. 12 : 6 - 25 and pg. 13 : 1 - 25
14. 12 / 15 / 05 - pg. 39 : 9 - 22
15. 12 / 19 / 05 - pg. 12 : 7 - 16 and pg. 13 : 1 - 25
16. 12 / 15 / 05 - pg. 9 : 11 - 13

Page # 2

17. 12/14/05 - pg. 6, 7, 8 and 9

18. 12/15/05 - pg. 50 : 1 - 25 and pg. 51

19. 6/17/10 - Post - Conviction Hearing - pg. 41 and 42

20. 3/7/06 - pg. 7 : 4 - 23 , pg. 56 : 4 - 25 ,
pg. 57 : 1 - 25 and pg. 67 : 9 - 25

21. 8/10/11 - Post - Conviction Opinion - pg. 9

22. 12/14/05 - pg. 51 : 15 - 24

B. Issue # 2 - The Medical Records ( Exculpatory Information )

1. 3/7/06 - pg. 7 : 24 - 25 and pg. 8 : 1 - 17

2. 3/7/06 - pg. 101 : 16 - 25 and pg. 102 : 1 - 7

3. 3/7/06 - pg. 54 : 1 - 25 and pg. 55 : 1 - 25

4. 3/7/06 - pg. 8

5. 8/10/11 - Post - Conviction Opinion - pg. 11

6. 11/20/13 - District Court Opinion - pg. 8 and 9

7. 12/14/05 - pg. 58 : 1 - 15

8. 3/7/06 - pg. 54 : 1 - 24 and pg. 55 : 1 - 25

C. Issue # 3 - Erroneous MPTJ - Jury Instructions

1. 12/14/05 - pg. 48 : 7 - 25 and pg. 49 : 1 - 17

2. 8/10/11 - Post - Conviction Opinion - pg. 12

3. District Court Opinion - 11/20/13 - pg. 9 and 10

4. 8/10/11 - Post - Conviction Opinion - pg. 13

5. The Maryland Pattern Jury Instructions - 4 : 17 . 3

6. 12/14/05 - pg. 44 : 3 - 24

7. 8/10/11 - Post - Conviction Opinion - pg. 13 and 14

8. Review Post - Conviction Opinion - Issue # 3 in relations

Page #2

to Issue #2 in this Petition — Judge White's Memorandum
Opinion — 8 / 10 / 11
9. 11 / 20 / 13 — District Court Opinion — pg. 16
10. 8 / 10 / 11 — Post - Conviction Opinion — pg. 14 and 15
11. 12 / 19 / 05 — pg. 82 and 85
12. The Maryland Pattern Jury Instructions — 4. 17. 2 and
2nd Degree Attempt Murder Instruction
13. 8 / 10 / 11 — Post - Conviction Opinion — pg. 13
14. Review Issue #5 which corroborates with this issue in
the Informal Preliminary Brief Order to the 4th Circuit
15. 12 / 19 / 05 — pg. 83 to 100 , pg. 89 : 21 and
pg. 83 to 89 21
16. Review Post - Conviction Opinion — Issue #2 in relations
to Issue #2 in this Petition — Judge White's Memorandum
Opinion — 8 / 10 / 11

D. Issue #4 — Failure To Attack The Victim's Credibility
1. Maryland Rules 5 - 806 ( a )
2. Maryland Rules 5 - 609
3. 8 / 10 / 11 — Post - Conviction Opinion — pg. 15 and 16
4. 8 / 10 / 11 — Post - Conviction Opinion — pg. 16
5. 12 / 19 / 05 — pg. 57 : 20 - 25 and pg. 58 : 1 - 15

E. Issue #5 — ASA Grant McDaniel Improper Comments
1. 12 / 19 / 05 — pg. 77 : 4 - 16
2. 12 / 19 / 05 — pg. 91 : 17 - 25 and pg. 92 : 1 - 12
3. 2 / 7 / 06 — pg. 80 : 25 and pg. 82 : 1 - 13

pg. #4

4.  2 / 24 / 06  -  pg. 4 and 5

5.  11 / 20 / 12  -  District Court Opinion  -  pg. 10 and 11

6.  3 / 7 / 06  -  pg. 76 : 3 - 5  and pg. 77 : 6 - 7

7.  3 / 7 / 06  -  pg. 75 , pg. 76 , pg. 76 : 23 - 24 ,
     pg. 77 : 1 - 7  and pg. 75 : 23 - 24

8. Review Issue # 1 in this Petition For Habeas Corpus
Relief in the 4th Circuit For Petitioner's Exhibits and
Transcripts as it relates to the Issue # 5 here.

9.  12 / 19 / 05  -  pg. 77 : 4 - 16

10.  12 / 15 / 05  -  pg. 64 and 65

11.  2 / 24 / 06  -  pg. 45 : 3 - 25 and pg. 46 : 1 - 20

12.  12 / 19 / 06  -  pg. 91 : 17 - 25 and pg. 92 : 1 - 12

13.  12 / 19 / 06  -  pg. 44 : 1 - 24 , pg. 50 : 4 - 24 ,
     pg. 50 : 25 , pg. 51 : 1 - 10 , pg. 52 : 1 - 2

14.  12 / 19 / 05  -  pg. 77 : 4 - 16

15.  8 / 10 / 11  -  Post - Conviction Opinion  -  pg. 17 and 19

16.  12 / 19 / 05  -  pg. 91 : 17 - 25 , pg. 92 : 1 - 12 and
     pg. 90 : 9

17.  3 / 24 / 06  -  pg. 5 : 1 - 9

18. Review Issue # 5 in this Informal Preliminary Brief
as it relates to this issue here.

19.  12 / 19 / 05  -  pg. 82 to 100 , pg. 91 to 95
and  pg. 100

F.  Issue # 6 - An Improper Polling and Hearkening of the
Jury's Verdict Constitutes An Illegal Sentence

1.  12 / 19 / 05  -  pg. 102 to 106

Page #5

2. Review Court's decision of the Glenn Dale Truley case,
Case #18933314 - Post-Conviction #10129 - date 4/17/09
3. 8/10/11 - Post-Conviction Opinion - pg. 21, 22
and 23
4. 8/10/11 - Post-Conviction Opinion - pg. 22
5. 12/14/05 - pg. 105 : 16 - 19
6. See Maryland Rules 4-345 (a) and Maryland Rules
4-327 (a) and (c)
7. 12/19/05 - pg. 102 to 106 , pg. 105 : 16 - 19
8. 8/10/11 - pg. 23 and 24 - Review Judge White's
Memorandum Opinion
9. Article 21 Maryland Declaration of Rights - Ineffective
Assistance of Trial Counsel - U.S. Constitution 6th Amend-
ment in relation to this issue respectively.


A. Issue #7   The Cumulative Error Doctrine
1. 8/10/11 - Post-Conviction Opinion - pg. 23
2. 12/19/05 - pg. 30 : 4 - 23
3. 3/7/06 - pg. 57 and 58


Note : All of the following transcripts can be read in the
Court of Appeal briefed files - Check All Files .
6/17/10 - Court File # 1
12/15/05 - Court File # 2                    8/10/11
12/19/05 - Court File # 3        >     Court File # 12 -
3/7/06 - Court File # 4                Post-Conviction
3/24/06 - Court File # 5               Memorandum Opinion

ge #6

Review Additional Information With Federal Law On
The April 7th 2005 Issue on Pages A to J.
See Federal Law Attached To This Issue # 1

See Connedy v. Adams , F. 2d , ( 2013 ) WL 452827
( 9th Circuit , February 7, 2012 ) ruled on a 2254
Motion Similar to Vonte' Proffuey's case.

Addendum

Federal Habeas Corpus Petition to the Court of Appeals - 4th Cir.

Addendum Attached With Tangible Photographs and Exhibits

All of this evidence is 100% relevant to the case in front of the United States Court of Appeals, 4th Circuit - For Verification and Authentic Petitioner's Exhibits Check

Petitioner's Exhibits As Present On Post-Conviction Hearing June 17, 2010 :

1. Petitioner's Exhibit #1 - April 7, 2005 photo
2. Petitioner's Exhibit #2 - May 2, 2005 photo
3. Petitioner's Criminal History - Presented on 6/17/10 at Post-Conviction Hearing with April 7, 2005 and May 2, 2005 For Authentic Verification By Central Booking Facility - Assistant Commissioner - Renard E. Brooks - Presented At Post-Conviction Hearing - Date of Arrest and Intake Facility #'s will clarify any misunderstanding of the day of arrest and etc. - Check Any Information Needed

4. Petitioner's Exhibit #13 - The Photo of the Appellant From official Central Booking Arrest Mugshot taken on an unknown date from a previous arrest in an unrelated case. Also, the photograph the State Prosecutor gave Appellant's trial counsel (J) after requested by counsel (J) to believe this was the Appellant at the time of shooting - April 27, 2005. Notice there is no booking intake #'s to verify the date of arrest.

5. State's Exhibit #1 ( also Petitioner's Exhibit #7 located in appeal file ) - Photo Array From April 27, 2005 shown and signed by Brian Norman ( eyewitness ) - xerox copy of the official photograph w/ Norman's statement the night of the shooting .

6. Petitioner's Table of Contents of Trial Hearings on 12/15 and 12/19/2005 to show State and Defense Exhibits Presented At Trial - To Show On The Record The Jury Note Is Not In The Court Files , Nowhere To Be Found As The Post-Conviction Court Judge Pamela White Erroneously / Mistakenly Believed Was Presented At Trial on December 19, 2005 on pg. 82 and 85

Note-#6 : If the note exists then , I ( the Appellant ) ask that the Court of Appeal send me a copy of this trial exhibit ( all State and Defense Exhibits Should Always Remain On File , Not To Be Tampered With , Only Utilized For Court Hearing Purposes , Only ! ! ! Petitioner believes the jury note no longer exists , either the Court lost it or it was never placed on file at all . Either way , this is a violation of the law if it cannot be found .

There are 14 pages total with His Addendum Attachment
X Vonté Avon Gulney

All records was relevent and presented to Court !



## Division of Pretrial Detention and Services
## 400 E. Madison Street, Baltimore, MD 21202
## Responsive Document Summary

**Due Date**  4/30/2010

**Type**  Subpoena Case No. 105146030

**Requestor/**
**Place to deliver**
David W. Lease, Esquire
c/o Stephanie A. McGovern
11 N. Washington ST, Ste. 520
Rockville, MD 20850
(301) 838-8950
smcgovern@slglaw.com

**Subject(s)**
Gaffney, Vonte
SID (99)2254726   CBF200479082
Arrest Date: 4/7/2005

**Responsive Material**
**Attached**
(1) Statement of Authenticity
(2) Booking Photographs
(3) Central Repository Inquiry (to match arrest with CBF
# and establish date of photographs)

**Responsive Materials**
**Missing**
None

**Comments**

If additional assistance is needed, please contact:
Linda Bridgeman at (410) 209-4362 or
lbridgeman@dpscs.state.md.us.

Universal Print Display

Page 1 of 2

Print        Save        Exit

# Single Image Profile
### ISSUED: Monday, April 5, 2010 8:59 AM



**VONTE  GAFFNEY**

DOB:

TCN:        CBF200479082

SID:

Basefile Mugshot

# BASEFILE MUGSHOT
## ISSUED: Monday, April 5, 2010 8:55 AM
### VONTE   GAFFNEY

 

HEIGHT: **602**

WEIGHT: **235**

SEX: **MALE**

RACE: **BLACK**

EYE COLOR: **BROWN**

HAIR COLOR: **BROWN**

CBF#: **CBF200479082**

DOC#:

CITIZENSHIP:

POB:



# Department of Public Safety and Correctional Services

## DIVISION OF PRETRIAL DETENTION AND SERVICES
## OFFICE OF THE COMMISSIONER
400 E. MADISON STREET• BALTIMORE, MARYLAND 21202
(410) 209-4290 • FAX (410) 209-4250 • TOLL FREE (866) 274-0105 • V/TTY (800) 735-2258 • www.dpscs.state.md.us

STATE OF MARYLAND

MARTIN O'MALLEY
GOVERNOR

ANTHONY G. BROWN
LT. GOVERNOR

GARY D. MAYNARD
SECRETARY

G. LAWRENCE FRANKLIN
DEPUTY SECRETARY

DIVISION OF PRETRIAL
DETENTION AND SERVICES

WENDELL M. FRANCE
COMMISSIONER

KEVIN PATTEN
INTERIM
DEPUTY COMMISSIONER

RENARD E. BROOKS
ASSISTANT COMMISSIONER

(1)  I, am the Custodian of Records of or am the qualified to administer the records for:

**The Division of Pretrial Detention and Services**, and

The accompanying Central Repository and Booking Photographs of Vonte Gaffney, DOB: ████████
SID: ████████, CBF200479082 and CBF000523288 completed on or about 04/07/2005 and 05/02/2005 respectively

(2)  Is a true and correct copy of documents that were made at or near the time of the occurrence of the matters set forth, by or from the information transmitted by, a person with knowledge of these matters; and
(a)  were kept in the course of the regulated conducted activity;
(b)  and were made and kept by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct.

_____     Renard E. Brooks
Signature                              Assistant Commissioner for
_____4 - 15 - 13____          Kevin Patten
Date                                      Interim Deputy Commissioner
                                            Division of Pretrial Detention and Services

DETAINEE PROFILE

Page 1 of 1

# Inmate/Detainee Profile
## ISSUED: Wednesday, April 14, 2010 3:57 PM



**PHYSICAL DESCRIPTION:**

| | |
|---|---|
| Sex: | MALE |
| Race: | BLACK |
| Height: | 602 |
| Weight: | 230 |
| Hair Color: | BLACK |
| Eye Color: | BROWN |

**VONTE   GAFFNEY**

| | |
|---|---|
| DOB: | |
| TCN/PCN: | CBF000523288 |
| SID: | |
| Date of Arrest: | 05-02-2005 |
| DOC: | |

DETAINEE PROFILE

# Inmate/Detainee Profile
### ISSUED: Wednesday, April 14, 2010 4:01 PM



**PHYSICAL DESCRIPTION:**

| | |
|---|---|
| Sex: | **MALE** |
| Race: | **BLACK** |
| Height: | **602** |
| Weight: | **230** |
| Hair Color: | **BLACK** |
| Eye Color: | **BROWN** |

**VONTE   GAFFNEY**

| | |
|---|---|
| DOB: | |
| TCN/PCN: | **CBF0005232S8** |
| SID: | |
| Date of Arrest: | **05-02-2005** |
| DOC: | |

```
II0001M          MARYLAND CJIS - IDENTIFICATION/INDEX SYSTEM   DATE: 04/05/2010
     PAGE: 01          CENTRAL REPOSITORY INQUIRY              TIME: 09:03
SID           CRIMINAL      FBI 642635VB2                    UPDATED 040406
NAME                   RAC SEX  DOB      POB  HGT  WGT  EYES  HAIR SKIN
GAFFNEY, VONTE          B   M          MD   602  230  BRO   BLK  MED
FINGERPRINT CLASSIFICATIONS:  PATTERN TYPE RIGHT WWWWW  HENRY
   NCIC:                              LEFT  /WWW/
                   COMMENT
STREET-ADDRESS:  NUMBER  DIR  STREET-NAME  SUF  CITY       STATE   ZIP
                 6613         WINDSORMIL   RD   BALTIMORE   MD      21207
COUNTRY OF CITIZENSHIP: UNITED STATES OF AMERICA
ALIAS-NAME:  GAFFNEY, VONTE AVON
APPENDED-ID:  CAUTION       DOB    SCARS/MARKS   SOC-SEC    MISC-NUMBER
                            071383
REFERENCE:DATE TYPE NUMBER       DESCRIPTION
     02112002 PAA  CBF200197866 CENTRAL BOOKING AND INTAKE FACILITY
     03152002 PAA  CBF000390244 CENTRAL BOOKING AND INTAKE FACILITY
     06262003 PAA  CBF200316781 CENTRAL BOOKING AND INTAKE FACILITY
     10112003 PAA  CBF200335386 CENTRAL BOOKING AND INTAKE FACILITY
     03192004 PAA  CBF000469358 CENTRAL BOOKING AND INTAKE FACILITY
     06102004 PAA  CBF200409976 CENTRAL BOOKING AND INTAKE FACILITY
     08202004 PAA  CBF200437020 CENTRAL BOOKING AND INTAKE FACILITY
NEXT-PAGE        P/N
NEXT PAGE(HIT ENTER)
```

*see page 2 for 4/7/2005*

Appeal: 13-8037    Doc: 7    Filed: 01/14/2014    Pg: 114 of 122

```
II0001M          MARYLAND CJIS - IDENTIFICATION/INDEX SYSTEM   DATE: 04/05/2010
    PAGE: 02              CENTRAL REPOSITORY INQUIRY            TIME: 09:03
SID 2254726    CRIMINAL      FBI 642635VB2                      UPDATED 040406
         08312004 PAA  CBF200442298 CENTRAL BOOKING AND INTAKE FACILITY
         10072004 PAA  CBF200423137 CENTRAL BOOKING AND INTAKE FACILITY
         01272005 PAA  CBF200485039 CENTRAL BOOKING AND INTAKE FACILITY
         04072005 PAA  CBF200479082 CENTRAL BOOKING AND INTAKE FACILITY
         05022005 PAA  CBF000523288 CENTRAL BOOKING AND INTAKE FACILITY
         03272006 DOC  334454        MRDCC
         09272001 MAF  CBF200150877 CENTRAL BOOKING AND INTAKE FACILITY
         11182001 MAF  CBF200155233 CENTRAL BOOKING AND INTAKE FACILITY
```

*arrest date*    *booking number*

```
END-OF-DISPLAY P/1
```

This is the illegal photograph given by the ASA



ly lawyer believed the State's Attorney over me.

r. Rosenberg depended on the State Prosecutor to present a

utograph to acquittal me of all charges.

nnt's bad judgement as an experience attorney for almost 40 yrs.



DEFENDANT'S
EXHIBIT

This group of photographs may or may not contain the picture of the person who committed the crime now being investigated. Keep in mind that hair styles, beards and moustaches may be easily changed. Also, photographs may not always depict the true complexion of a person (complexion may be lighter or darker than shown in the photo.) When you look at all the photos, tell me whether or not you see the person who committed the crime. Do not tell other witnesses that you have or have not identified anyone.



S.I.D. #                          S.I.D. #                          S.I.D. #

Signature                          Signature                          Signature

Date            Time              Date            Time              Date            Time

S.I.D. #                          S.I.D. #                          S.I.D. #

Signature                          Signature                          Signature

Date            Time              Date            Time              Date            Time

SUPPLEMENT REPORT
Form 04/097 LN
1160-25-23

POLICE DEPARTMENT
BALTIMORE, MARYLAND

☐ Continuation          ☒ Follow Up

| | | | | | |
|---|---|---|---|---|---|
| Person ☒ | Property | Miscellaneous | Vehicle | Missing Person | Custody |

| 1 Crime / Incident | | | Attempt ☐ | 2 Complaint Number |
|---|---|---|---|---|
| VC SHOOTING DATABASE | | | | 055D16146 |

3 Location of Offense / Incident (Street Address, Zip)
512 Richwood Ave.                                        Page  1   of  1

| 6 Unit | 7 Post of Occur | 8 Reporting Area | 9 Street Code | 10 CAD Number | 4 Date / Time of This Report | 5 Arrest / Custody Number |
|---|---|---|---|---|---|---|
| | 524 | | | 2 535 | 04/28/2005     01:09 AM | |

| 11 Original Report Date / Time | 12 Offense / Incident Change From |
|---|---|
| 04/27/2005     1831 | |

| 13 Case Status | 14 Multiple Clearance | 15 Case Disposition | | 16 Follow-up | 17 Crime Code | 18 Crime Classification |
|---|---|---|---|---|---|---|
| ☒ Open  ☐ Closed | ☐ Yes  ☐ No | ☐ Cleared  ☐ Not Cleared  ☐ Explain | | ☐ Yes ☐ No | | |

| 20 Complainant / Victim | Name (Last, First, MI), or Firm Name if Business | Residence / Address (Include City, State, Zip) | Sex | Race | Age | DOB |
|---|---|---|---|---|---|---|
| | Davis, Marcus | 1345 Sargeant St. Baltimore, MD 21223 | M | B | 24 | |

20 Copies Forwarded To

| Cont'd Sections | Narrative: (1) Continuation of any preceding items. (2) Property Listing, to include property taken and seized/submitted evidence/property; list property inventory number(s) when applicable. (3) Describe details of incident. Include all steps taken in preliminary investigation. (4) List all additional notification, including name, agency or assignment, unit number, telephone number, date, time. (5) List all arrests, including Arrest Numbers and charges. |
|---|---|

### Witness Interview/ Photo Array

Witness: Brian Craig Norman          M/B 5/10/84
         1501 E. Coldspring Lane
         Balto., Md. 21218

The above witness was transported to the Northern District and interviewed in reference to the shooting that is now being investigated. During the course of this interview Mr. Norman was shown a photographic line-up which contained the below SID numbers.

SID# ▓▓▓▓▓          SID# ▓▓▓▓▓          SID# ▓▓▓▓▓

SID# ▓▓▓▓▓          SID# ▓▓▓▓▓          SID# ▓▓▓▓▓

After viewing the photographs Mr. Norman identified SID# ▓▓▓▓▓ as," looking like the guy who shot Marcus." SID # ▓▓▓▓▓ is assigned to Vonte Gaffney, m/b 7/13/83, 4425 Old York Road.

I affirm and declare that the statements above are true to the best of my Knowledge:     Reporting Person's Signature          Date

| Reporting Officer Name (PRINT CLEARLY) | Sequence No. | Assignment | Signature |
|---|---|---|---|
| Icknight | E063 | ND/DDU | |
| Approving Supervisor Rank and Name | Sequence No. | Assignment | Signature |
| | | | |

| S Date Entered By | Sequence No. | Date | Time | 25 Reviewer | 26 Referred To |
|---|---|---|---|---|---|
| | | | | | |

REPORT SHOULD BE TYPED OR LEGIBLY PRINTED IN BLACK INK

COPY

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

STATE OF MARYLAND,

     VS.                               Case No. 105146030

VONTE GAFFNEY,

                    Defendant.
_____/

REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDINGS
(Trial on the Merits)
VOLUME III OF III

Baltimore, Maryland

Monday, December 19, 2005


BEFORE:

HONORABLE SHIRLEY M. WATTS, Associate Judge
(and a jury)


APPEARANCES:

    For the State:

        GRANT MC DANIEL, ESQ.

    For the Defendant:

        LAWRENCE ROSENBERG, ESQ.

recorded on videotape

Transcribed by:
CHARLES F. MADDEN,
Official Court Reporter
515 Courthouse East
111 North Calvert Street
Baltimore, Maryland 21202

1

# T A B L E   O F   C O N T E N T S

P a g e

Preliminary matters                                              2

Stipulation re:  Defendant's prior conviction which
prohibits him from being in possession of a regulated
firearm                                                         18

Defendant's motion for judgment of acquittal at the
close of the State's case (denied)                              18

Defendant advised of right to testify or remain
silent                                                          20

Discussion re:  Instructions to the Jury                        24

Instructions to the Jury                                        31

Closing argument

      By Mr. McDaniel                                           43

      By Mr. Rosenberg                                          52

Rebuttal by Mr. McDaniel                                        74

Additional instructions by the Court                            77

Jury questions — *pg. 83 - Mentioned Only , No Exhibit*         83
Verdict of the jury  *Presented to the Trial Court As*         101
                         *Evidence*

Poll of the jury as to verdict                                 103

Discussion re: Bail status                                     107

Discussion re:  Sentencing date                                107

STATE'S WITNESSES

KAREN BRZOWSKY

      Direct Examination by Mr. McDaniel                         6

      Cross-Examination by Mr. Rosenberg                        12

i

T A B L E   O F   C O N T E N T S   (Continued)

                                                          P a g e

STATE'S WITNESSES (Continued)

    Redirect Examination by Mr. McDaniel              16

    Recross-Examination by Mr. Rosenberg             17

DEFENDANT'S EXHIBITS                    IDENTIFIED  IN EVIDENCE

1 - (wristband)                             23          23

o0o

G ENVELOPE TO THE RIGHT
SS, FOLD AT DOTTED LINE

ED MAIL™

00 3346 9278

UNITED STATES
POSTAL SERVICE

U.S. POSTAGE
PAID
RANDALLSTOWN, MD
21133
JAN 10 '14
AMOUNT

1005          23219

$8.91
00024720-08

INSPECTED

JAN 1 4 2014

or, Clerk S. MARSHALS

als, Fourth Circuit

Annex, 5th Floor

St.

23219

Vonte
ECI
30420 Revells Neck Rd
Westover, MD 21890

7013 3021

Patricia S. Con
U.S. Court of App
U.S. Courthous
1100 E. Main
Richmond, VA